NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4973-13T4

CHRISTINE AVELINO-CATABRAN,

        Plaintiff-Appellant,

v.

JOSEPH A. CATABRAN,

        Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

June 16, 2016

APPELLATE DIVISION

Submitted December 8, 2015 — Decided June 16, 2016

Before Judges Fisher, Rothstadt, and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-791-02.

Newsome O'Donnell, L.L.C., attorneys for appellant (Lynn Fontaine Newsome, of counsel; Alyssa M. Clemente, on the brief).

Ann Crawshaw Coquin, attorney for respondent.

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

    In this post-judgment dissolution matter, plaintiff Christine Ewart, formerly known as Christine Avelino-Catabran, appeals from the Family Part's May 12, 2014 order recalculating child support and holding her responsible for half of the

parties' eldest daughter's college expenses. She also appeals from the court's May 30, 2014 order that deemed the new child support amount retroactive to October 25, 2012.[1] Her primary argument is that, when determining plaintiff's obligation for college costs, the court improperly excluded from the child's available financial aid a Federal Direct PLUS Loan (PLUS Loan) secured by the parties. Plaintiff also contends that the court improperly determined she should be responsible for fifty percent of those costs. Finally, she challenges the portions of the court's order that modified support, arguing the court "erred in utilizing a mathematical formula to determine child support" and in changing custody and parenting time without a hearing.

Defendant Joseph A. Catabran disagrees and argues that the court correctly excluded the PLUS Loan from the child's contribution to college costs and properly required plaintiff to be responsible for fifty percent of those expenses in accordance with the parties' property settlement agreement (PSA). He further contends that support was correctly calculated and that not only did plaintiff fail to raise certain issues she now

---

[1] This issue, however, has not been briefed, and we consider it abandoned. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015).

argues on appeal, but she also "failed to cooperate with discovery[, and] withheld information from . . . [and] gave false information to the trial court." Defendant avers that plaintiff comes before this court with "unclean hands" preventing relief being granted to her.

We have considered the parties' contentions in light of our review of the record and the applicable legal principles. We affirm the court's order as to college expenses, but vacate and remand for recalculation of child support.

The salient facts developed in the motion record can be summarized as follows. The parties were married on June 18, 1993, and their divorce was finalized on August 14, 2002. The final judgment of divorce (JOD) incorporated the parties' PSA, which addressed the custody and support of their two daughters — Catherine, now twenty-one years old, and Isabelle, seventeen.

Pursuant to the PSA, the parties shared joint legal and physical custody of the children, with the parent of primary residence designated as plaintiff during the school year and defendant during the summer. The PSA required defendant to pay $137 per week to support both children, though the parties apparently agreed to increase this obligation to $800 per month in 2009.

The PSA also provided that the parties would be equally responsible for the children's net college expenses — those remaining after the children applied for financial assistance. Specifically, it provides:

> The minor children shall have an obligation to apply for any and all scholarships, student loans, grants and financial aid that may be available to help defray the cost of each child's attendance at college. After deductions for scholarships, student loans, grants and financial aid, the parties agree to be responsible for the net college educational costs of the minor children. Net college cost[s] will be split equally by both parties.[2]

In June 2004, the parties agreed to change their custody arrangement, eliminating alternating weekends such that the children would live full-time with plaintiff during the school year and with defendant during the summer. They changed the custody arrangement again in May 2011, when plaintiff and her new husband moved to Switzerland with the children. In order to facilitate the move, defendant signed a letter stating plaintiff had sole custody of the children "[f]or the duration of, and subject to, their residing in Switzerland."

---

[2] Notably, the last sentence was a handwritten addition to the provision, initialed by the parties, that replaced stricken language that stated "commensurate with their ability to pay at the time."

After graduating from high school, Catherine decided to attend New York University (NYU) beginning in the fall of 2012. NYU's total cost of attendance was $62,768, but the school offered her an extensive financial aid package, which included a $12,720 scholarship, $3000 for work-study, and a total of $7900 in student loans. It also included $39,148 in PLUS Loans, which the award letter defined as "the maximum amount . . . . [a] parent may borrow." (emphasis added). Catherine accepted the full amount of the scholarship, work-study, and student loans available to her. In an email sent to plaintiff on June 21, 2012, defendant asked plaintiff, "how much Parent PLUS Loan should we borrow?," and suggested they borrow $12,770 to cover plaintiff's share of the balance owed for college.[3] Plaintiff responded by directing defendant to "Please borrow this money on behalf of Catherine." Pursuant to this exchange, defendant accepted $12,770 of the available PLUS Loan.

On October 25, 2012, defendant filed a motion seeking a modification of child support to reflect a split-parenting arrangement, an order requiring plaintiff to pay half of Catherine's net college expenses, and judgment against plaintiff

---

[3] According to defendant, plaintiff needed the loan because her credit was bad. According to plaintiff, that loan was to be repaid by Catherine.

for the amounts due on the PLUS Loan and owed to NYU for the Spring 2013 semester, among other relief. In response, plaintiff asserted there were no funds owed by her for Catherine's college costs because NYU provided Catherine enough financial aid to cover the entire cost. The financial documents submitted indicated plaintiff's gross income was approximately $225,000 annually and defendant's $113,000, substantially more than the approximately $73,000 they each were earning at the time of the divorce.

On May 1, 2013, the Family Part entered an order, dated April 26, 2013, granting in part and denying in part defendant's request for contribution for Catherine's schooling, and granting his request for a child support modification (May 1 order). The order stated, "[t]he Court has determined that the [p]laintiff shall make a contribution to the child's college expenses but needs the parties to submit their financial documents in order to determine how much that contribution should be." The order directed them to submit pay stubs and tax returns for that purpose and for calculating the parties' support obligations moving forward.

In its appended statement of reasons, the court found that Catherine's financial aid package did not cover the full cost of attendance, that the PLUS Loans were available only to parents,

and that defendant had established changed circumstances warranting a support modification. It stated that, based upon the parties' email exchanges, "[p]laintiff was well aware of the minor child's financial aid package [and] the loans that the [d]efendant was taking out to cover her share of the expenses." It also found that, based on the circumstances and superior employment opportunities offered to NYU graduates, the child made a legitimate decision to attend NYU instead of a school suggested by plaintiff. As to child support, the court found that a change was warranted because the parties' "income[s] ha[d] changed dramatically since [they] first entered into the PSA."

On June 4, 2013, the parties moved for reconsideration and clarification of the May 1 order.[4] The court denied the parties' respective motions on January 24, 2014,[5] determining that their

---

[4] In response to the May 1 order, both parties submitted letters to the court requesting clarification of certain issues raised by the order — namely, the method by which support would be calculated and the extent of plaintiff's obligation to contribute to Catherine's college expenses. When the court did not respond to the parties' letters, they filed their respective reconsideration motions.

[5] This was actually the second order it entered. The court signed an original order on August 15, 2013. However, the parties did not receive a copy of this order and did not learn of it until January 2014. Upon learning of the order, defendant requested the court vacate the August order and enter an identical order to protect the parties' rights to seek timely
(continued)

motions were attempts "to re-argue issues that were already decided," and were time-barred. Over the next five months, the parties submitted multiple letters to the court with additional information regarding their finances. In one submission, plaintiff claimed she could not afford to pay for her daughter's college and that she had filed for "Chapter 11" relief in bankruptcy court in June 2013.

On May 12, 2014, the court ordered plaintiff to contribute fifty percent of Catherine's net college expenses and defendant to provide proof of such expenses. The court also modified the parties' support obligations, ordering defendant to pay $186 per week to plaintiff for Isabelle, and plaintiff to pay $281 per week to defendant for Catherine, resulting in a net payment of $95 per week to defendant.

In the accompanying statement of reasons, the court stated it found plaintiff had sufficient resources to contribute to Catherine's college expenses in accordance with the parties' PSA. In support of its determination, the court considered the factors established in <u>Newburgh v. Arrigo</u>, 88 <u>N.J.</u> 529, 545

---

(continued)
relief from the court's order. The court obliged, and entered an order on January 24, 2014, recognizing that a clerical error led to the original order not being forwarded to the parties and "giv[ing] [the original order] an effective date of January 24, 2014."

(1982), but relied upon the PSA's express requirement that the parties contribute equally to their children's college expenses, noting also that "both parents share[d] the goal of educating their daughter." It concluded that, despite her pending bankruptcy petition, which did not impact her support obligation, plaintiff had sufficient resources to meet her obligation under the PSA.

As to child support, the court noted that "[d]efendant [was] seeking a modification of child support based on the [p]arties' daughters['] living arrangements. Namely, Catherine is in college, and Isabelle lives overseas in Switzerland." The court found that "the living arrangements of the children ha[d] changed significantly enough to warrant a corresponding change in child support." It observed that Catherine lived with roommates at college and "primarily visit[ed] [d]efendant during her time off from school," and that Isabelle lived in Switzerland with plaintiff and her husband "and does not have visitation with her father."

Based on those living arrangements, the court determined the parties' new child support obligations by relying on a combination of the court's Child Support Guidelines (guidelines), R. 5:6A, and defendant's proposal for support,

without setting forth the details of the proposal in the court's decision. The court stated:

> Defendant has submitted a well thought out, and clearly articulated plan for determining child support. His calculations take into consideration the incomes of the [p]arties including bonuses, income attributable to the [p]arties, conversion of Swiss [f]rancs to American [d]ollars, a 40% reduction in child support for Catherine based on her room and board taken into consideration above, medical insurance, as well as a 4% increase in child support over the guidelines to take into consideration the [p]laintiff's income being over the guidelines threshold for calculation. He has calculated the child support from him to Isabelle as $186 per week or $806 per month, and to Catherine from [p]laintiff of $281.00 per week or $1,218 per month. His calculations are not off the mark. The Court accepts the calculations and the [p]arties shall pay accordingly. This results in a payment of $95 to [d]efendant from [p]laintiff weekly.

The court attached to its statement of reasons a "Child Support Guidelines-Sole Parenting Worksheet" for two children in a "split-parenting situation."[6]

---

[6]  "The 'split-parenting' provisions . . . deal with a multi-child family in which one parent has custody of one or more children, and the other parent has custody of other children." Benisch v. Benisch, 347 N.J. Super. 393, 400 (App. Div. 2002); see also Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A, ¶ 15, to R. 5:6A at www.gannlaw.com (2016) [hereinafter Guidelines].

As noted, the court later supplemented the order to clarify that the support modification was retroactive to October 25, 2012, the date of defendant's initial motion.

After the court's entry of its orders, plaintiff filed this appeal.

We begin by recognizing that our review of the Family Part's determinations regarding child support is limited. We "do not disturb the factual findings and legal conclusions of the [motion] judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). Also, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Accordingly, "[t]he general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015); see also Rova Farms, supra, 65 N.J. at 483-84. However, we confer no deference to a trial court's interpretation of the law, which we review de novo to determine whether the judge correctly adhered to applicable legal

standards.  See Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).  Reversal is reserved for only those circumstances in which we determine the factual findings and legal conclusions of the trial judge went "so wide of the mark that a mistake must have been made."  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007).

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion."  Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); see also J.B. v. W.B., 215 N.J. 305, 325-26 (2013).  "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."  Jacoby, supra, 427 N.J. Super. at 116 (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).

The Family Part's "substantial discretion" in determining child support applies equally to compelling a parent to contribute to their child's college costs.  Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008).  We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and

the judge has not abused his or her discretion.  <u>Gac v. Gac</u>, 186 <u>N.J.</u> 535, 547 (2006); <u>Cesare</u>, <u>supra</u>, 154 <u>N.J.</u> at 411-12.

Applying these parameters to our review, we first consider plaintiff's arguments regarding the motion judge's conclusion that she was obligated to pay fifty percent of her child's college costs in accordance with the PSA, rather than determining the extent of her obligation using the factors set forth in <u>Newburgh</u>,[7] and that the PLUS Loan was not part of the

---

[7]  <u>Newburgh</u> provides for the balancing of the following factors:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child . . . ; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child . . . ; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training
>
> (continued)

child's independent financial aid resources, relying upon NYU's inclusion of PLUS Loans as a type of financial aid available to its students and the distinction made in the PSA between "student loans" and "financial aid." She warns that the court's finding that PLUS Loans are not considered financial aid "will undoubtedly have wide sweeping public policy implications," namely by "modify[ing] the intent of any Property Settlement Agreement containing this language." We find her arguments to be without merit.

The trial court correctly enforced the provisions of the PSA that obligated plaintiff to be equally responsible for the

---

(continued)
> and to the overall long-range goals of the child.
>
> [Newburgh, supra, 88 N.J. at 545.]

Notably, defendant correctly argues that plaintiff did not raise these factors to the motion judge as being applicable to the parties' dispute, contending instead that the language of the PSA supported her position. She now asserts them on appeal because they were considered by the motion judge, who, after identifying the factors in his written decision, relied upon the parties' PSA in ordering plaintiff to contribute towards her daughter's education. Under these circumstances we choose to consider and clarify the issue rather than, as defendant argues, exercise our right to "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

children's college expenses. Absent "compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA," a court is generally bound to enforce the terms of a PSA. Quinn v. Quinn, ___ N.J. ___, ___ (2016) (slip op. at 36) (enforcing termination of alimony consistent with the parties' agreement regarding cohabitation). Consistent with New Jersey's "strong public policy favoring stability of arrangements in matrimonial matters," id. at ___ (slip op. at 19) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)), where matters in dispute in a post-judgment matrimonial motion are addressed in a PSA, courts will not "unnecessarily or lightly disturb[]" the agreement so long as it is fair and equitable. Id. at ___ (slip op. at 20) (quoting Konzelman, supra, 158 N.J. at 193-94); see also Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (a matrimonial agreement is enforceable so long as it is not inequitable); Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (PSAs are entitled to "'considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just." (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981))). If the meaning of the agreement is in dispute, "[t]he court's role is to consider what is written in the context of the circumstances at the time of the drafting and to apply a rational meaning in keeping with the

'expressed general purpose.'" Pacifico, supra, 190 N.J. at 266 (2007) (quoting Atl. N. Airlines v. Schwimmer, 12 N.J. 293, 302 (1953)).

However, if circumstances have changed in such a way that strict enforcement of the agreement would no longer be equitable, a court remains free to alter prior arrangements. See Quinn, supra, ___ N.J. ___ (slip op. at 25-26); see also Lepis v. Lepis, 83 N.J. 139, 146-48 (1980). Similarly, "[a] narrow exception to the general rule of enforcing settlement agreements as the parties intended is the need to reform a settlement agreement due to 'unconscionability, fraud, or overreaching in the negotiations of the settlement.'" Quinn, supra, ___ N.J. at ___ (slip op. at 23) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)).

Absent inequity or unanticipated changed circumstances not addressed by the agreement, a court is obligated to enforce its terms when it was "entered [into] by fully informed parties, represented by independent counsel, and without any evidence of overreaching, fraud, or coercion." Id. at ___ (slip op. at 35). Otherwise, "the court eviscerates the certitude the parties thought they had secured, and in the long run undermines this Court's preference for settlement of all, including marital, disputes." Id. at ___ (slip op. at 36).

A court's obligation to enforce marital settlement agreements applies to provisions regarding the parents' obligation to pay for their children's college expenses. Although parents generally are not obligated to support a child who has attained the age of majority, "in appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for children." Newburgh, supra, 88 N.J. at 543. "In general, financially capable parents should contribute to the higher education of children who are qualified students." Id. at 544.

Accordingly, where parties to a divorce have reached an agreement regarding children attending college and how those college expenses should be divided, and no showing has been made that the agreement should be vacated or modified, the Family Part need not apply all twelve factors pertinent to college expenses as identified in Newburgh, supra, 88 N.J. at 545. Rather, the court should enforce the agreement as written.[8] See Quinn, supra, ___ N.J. at ___ (slip op. at 35-36). Cf. Gac, supra, 186 N.J. at 544-45 (discussing the determination of college contribution in the absence of a PSA or JOD addressing

---

[8] In the absence of an agreement by the parties regarding the specific division of college costs, courts should balance the factors set forth in Newburgh and the statutory criteria of N.J.S.A. 2A:34-23(a), along with any other factors the court deems relevant to a fair allocation of expenses.

the parents' obligations); <u>Newburgh</u>, <u>supra</u>, 88 <u>N.J.</u> at 534 (requiring consideration of factors where there was no agreement regarding college expenses); <u>Gotlib</u>, <u>supra</u>, 399 <u>N.J. Super.</u> at 307-08 (finding Family Part erred in failing to consider factors where JOD provided that college expenses would be divided "in accordance with appropriate legal standards"); <u>Moss v. Nedas</u>, 289 <u>N.J. Super.</u> 352, 354, 360 (App. Div. 1996) (approving balancing of factors where PSA allocated costs "in proportion to [the parents'] ability to contribute").[9]

Here, the language of the parties' PSA clearly provides that "[n]et college cost[s] will be split equally by both parties," and the court considered their abilities to afford that contribution before ordering plaintiff to contribute equally, thereby ensuring there would be no undue burden on either parent. Given that plaintiff's income was at least two hundred thousand dollars per year, it cannot be said that the court's finding that she has sufficient resources to contribute equally, despite her pending bankruptcy petition, is "manifestly unsupported by or inconsistent with the competent, relevant and

---

[9] In <u>Moss</u>, the PSA stated that the parents would pay college expenses "in proportion to their ability to contribute," and the mother and the child had concealed important facts about college attendance from the father and even from the Family Part as the dispute was being litigated. <u>Moss</u>, <u>supra</u>, 289 <u>N.J. Super.</u> at 354-55.

reasonably credible evidence." Gnall, supra, 222 N.J. at 414 (quoting Cesare, supra, 154 N.J. at 412).

We are not persuaded otherwise by plaintiff's contention that she is not responsible for payment of the PLUS Loan she authorized defendant to secure "for Catherine." Catherine is not eligible to apply for or receive PLUS Loans herself. See 20 U.S.C.A. § 1078-2(a) (defining eligibility for PLUS Loans); Office of Fed. Student Aid, U.S. Dep't of Ed., Direct PLUS Loan Basics for Parents 8 (2015). Therefore, the PLUS Loans cannot be considered a student loan or financial aid available to Catherine for which she had to apply, as contemplated by the parties. The court correctly determined that plaintiff authorized the loan and she was responsible for same.

Turning to child support, we initially reject as being without merit plaintiff's contention that the court improperly determined, without a hearing, that defendant established a change in circumstances warranting modification of support. We afford deference to the family court's determination regarding the need for a support hearing and review them for an abuse of discretion. Jacoby, supra, 427 N.J. Super. at 123. A hearing is required only "when the submissions show there is a genuine and substantial factual dispute . . . , and the trial judge determines that a plenary hearing is necessary to resolve the

factual dispute." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); see also Jacoby, supra, 427 N.J. Super. at 123.

The court here correctly determined from the parties' submissions that Catherine's living at college and spending her time off with her father, rather than living in Switzerland with her mother, was a change in circumstances warranting a modification in support. See Jacoby, supra, 427 N.J. Super. at 113. We reject plaintiff's contention that by recognizing the children's current living arrangements the court changed custody. We also agree with the court's undisputed finding that the parties' incomes had substantially changed since their divorce. "A change in circumstances warranting modification of support may . . . result from an alteration in the fortunes of either party." Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997). A supporting spouse "is as much entitled to a reconsideration of child support where there has been a significant change for the better in the circumstances of the dependent spouse as where there has been a significant change for the worse in the [supporting] spouse's own circumstances." Ibid.

Plaintiff also contends the court erred in modifying the parties' child support obligations, as it used an incorrect method to calculate the award because it considered the factors

set forth in the guidelines rather than those set forth in N.J.S.A. 2A:34-23(a),[10] as required by Jacoby. Jacoby, supra, 427 N.J. Super. at 122. Defendant responds, arguing plaintiff cannot claim error in the court's calculation, as she neither criticized his proposed formula nor provided any alternative method of calculation for the court to apply. We reject defendant's argument and agree with plaintiff.

---

[10] N.J.S.A. 2A:34-23(a) requires the court to consider:

> (1) Needs of the child;
>
> (2) Standard of living and economic circumstances of each parent;
>
> (3) All sources of income and assets of each parent;
>
> (4) Earning ability of each parent . . . ;
>
> (5) Need and capacity of the child for education, including higher education;
>
> (6) Age and health of the child and each parent;
>
> (7) Income, assets and earning ability of the child;
>
> (8) Responsibility of the parents for the court-ordered support of others;
>
> (9) Reasonable debts and liabilities of each child and parent; and
>
> (10) Any other factors the court may deem relevant.
>
> [N.J.S.A. 2A:34-23(a).]

We conclude the motion judge failed to satisfy his obligations to properly calculate the child support award and to issue a clear statement of his reasons for the court's award. The court's reliance on defendant's use of the guidelines for calculating child support and its incorporation by reference of defendant's calculations were both improper and warrant reversal.

When applicable, the guidelines must be used to calculate child support awards. R. 5:6A; see also Guidelines, supra, Appendix IX-A. However, the support amount provided for by the guidelines may be "modified or disregarded by the court" upon a showing of good cause. R. 5:6A; see also Guidelines, supra, Appendix IX-A, ¶ 2. All support orders, even those relying upon a strict application of the guidelines, "must be based on the evidence and supported by a statement of reasons." Pressler & Verniero, supra, comment 1.2 on R. 5:6A.

If a court determines deviation from the guidelines is appropriate, it must nevertheless calculate the guidelines-based support award and state the specific findings justifying its deviation therefrom — specifically, why deviation is in the best interests of the child. R. 5:6A; see also Guidelines, supra, Appendix IX-A, ¶ 21. Thus, a court must follow this procedure when deviating from the guidelines to fix support in accordance

with an agreement by the parties. See Guidelines, supra, Appendix IX-A, ¶ 22.

When a trial court issues reasons for its decision, it "must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986). The trial court does not discharge that function simply by recounting the parties' conflicting assertions and then stating a legal conclusion, or, as here, incorporating by reference one of the parties' arguments. Also, a court cannot simply attach a guidelines worksheet in lieu of providing a statement of reasons. Fodero v. Fodero, 355 N.J. Super. 168, 170 (App. Div. 2002).

When "faced with the question of setting child support for college students living away from home," however, the guidelines are inapplicable and the court must determine support based on the factors set forth in N.J.S.A. 2A:34-23(a). Jacoby, supra, 427 N.J. Super. at 113; see also Guidelines, Appendix IX-A ¶ 18. Reliance exclusively upon the guidelines in these situations constitutes reversible error. Jacoby, supra, 427 N.J. Super. at 113.

Here, the court was required to consider the factors set forth in N.J.S.A. 2A:34-23(a) when calculating support for Catherine, as she was a college student living away from home. See Jacoby, supra, 427 N.J. Super. at 113. With respect to the parties' younger daughter, Isabelle, the court was required to apply the guidelines and explain any deviations therefrom. See R. 5:6A. The court did neither. Instead, the court relied upon defendant's "well thought out, and clearly articulated plan for determining child support," and accepted defendant's support calculations after determining they were "not off the mark." The court's statement regarding its abdication to defendant of its obligation to calculate support did not satisfy its obligation to provide a statement of reasons for its decision. See R. 1:7-4.

The court's reliance on defendant's proposed calculations for Catherine's support was also improper because the relied-upon calculation was based on the guidelines. R. 5:6A. As we stated in Jacoby,

> courts faced with the question of setting child support for college students living away from home must assess all applicable facts and circumstances, weighing the factors set forth in N.J.S.A. 2A:34-23a. Resort to the [guidelines] to make support calculations for college students living away from home is error.

> [Jacoby, supra, 427 N.J. Super. at 113
> (citation omitted).]

Finally, defendant's argument that plaintiff cannot challenge the court's method of calculation for the first time on appeal is without merit, as the court's support calculation was plainly inconsistent with established law. See Nieder, supra, 62 N.J. at 235; Jacoby, supra, 427 N.J. Super. at 116.

In sum, due to the court's failure to analyze the factors set forth in N.J.S.A. 2A:34-23(a) when calculating Catherine's support, and to properly calculate Isabelle's award under the guidelines and explain any deviation therefrom, we conclude the court abused its discretion by calculating the support award in a manner inconsistent with established law, and reverse the court's order modifying support. We remand for determination of child support anew.

In light of our determination, we need not reach the parties' remaining arguments.

Affirmed in part; reversed and remanded for calculation of child support and the issuance of a statement of reasons consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25