# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3902-18T2

RAOMAN DAVIS,

     Plaintiff-Appellant,

v.

ASHLEY SARDONI-DAVIS,

     Defendant-Respondent.

_____

Submitted January 27, 2020 – Decided February 25, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FM-05-0062-18.

Russell & Marinucci, PC, attorneys for appellant (Katrina Tattoli and Richard A. Russell, on the briefs).

Ashley Sardoni, respondent pro se.[1]

PER CURIAM

---

[1] We refer to defendant by her pre-marital name, which she has resumed using.

Plaintiff Raoman Davis appeals from a Family Part order reducing his monthly child support obligation, but not by as much as he wanted. After Davis and his former wife, defendant Ashley Sardoni, divorced, they agreed to a support amount well above the amount the Child Support Guidelines would have dictated. Nonetheless, Davis contends on appeal that the trial court should have revised his support obligation according to the Guidelines after he and his new wife had a child. Alternatively, Davis contends the trial court should have considered the statutory factors, N.J.S.A. 2A:34-23, in its outside-the-guidelines calculation. As we agree with the latter point, we reverse and remand for reconsideration.

I.

The parties divorced in December 2014 after a three-and-a-half-year marriage. They had one child together. Shortly before they married, Davis quit his job, earning over $50,000 per year, to follow his dream to be a filmmaker. He and a partner launched Itchy House Films, LLC, which produced films and music videos. Several months before their divorce, the parties entered a nine-point "contract," in which they merely agreed to agree on child support. Later incorporated in the divorce judgment, the contract stated, "Both parties will

A-3902-18T2

agree on monetary support for the care of [their child] on a monthly basis. This will include food, shelter, and basic necessities."

After the divorce, the parties agreed on a child support number: $700 a month. Davis later agreed to increase it to $1000 a month, although the parties dispute when and why he did so. Sometime thereafter, Davis asked the Family Part to reduce his obligation. On July 12, 2017, the trial court denied his motion, because he failed to show a prima facie change in circumstances. The order directed Davis to continue paying $1000 a month. He did not appeal.

A year later, after he and his new wife had a child, Davis filed another motion. He asserted the birth constituted a significant change in circumstances that warranted reducing his obligation. Sardoni conceded the change in circumstances, but disputed Davis's entitlement to a Guidelines-based award.

After both parties testified at an evidentiary hearing, the trial court found they were both underemployed – Davis voluntarily, Sardoni not. Davis quit a job paying over $50,000 per year before his marriage to Sardoni. By contrast, Sardoni had been trying for years to obtain a full-time teaching position that offered benefits. In 2017, her gross income was $17,800.

Davis asserted that for the past eight years, his film company earned about $21,000 per year. The judge found this incredible. Noting that Davis had agreed

to pay, and did pay, $12,000 a year in child support, the court found it "inconceivable" he did so with pre-tax business income of just $21,000 a year.

Davis testified he also ran a consulting company he wholly-owned. Davis provided a Schedule C for the consulting company, but not for his film business. The trial judge found that the omission "ma[d]e [Davis's] assertion of such limited income very suspect." This finding was against the backdrop of testimony and other evidence of numerous expensive vacations Davis had taken over the past few years. The court disbelieved his claim that his wife paid for his standard of living.

The trial court concluded, consistent with Sardoni's concession, that Davis made a prima facie showing of a significant change in circumstances based on the birth of Davis's new child.[2] However, the trial court rejected Davis's

---

[2] The trial judge relied on Martinez v. Martinez, 282 N.J. Super. 332 (Ch. Div. 1995). However, we do not read Martinez to mean a new child invariably warrants reducing a prior support obligation. The "changed circumstances" must be those "as would warrant relief from the support . . . provisions involved." Lepis v. Lepis, 83 N.J. 139, 157 (1980). In this case, Davis had to show a reduced ability to pay. See Wei v. Wei, 248 N.J. Super. 572 (App. Div. 1991) (holding that obligor failed to show changed circumstances impairing his ability to pay support, notwithstanding his remarriage, as his income had increased). Notably, the court found Davis's evidence of his financial capacity incredible. However, as Sardoni does not challenge the court's threshold finding, we shall not disturb it. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

A-3902-18T2

suggestion that the court recalculate support according to the Guidelines, utilizing his alleged income of $21,000. That would have reduced his support obligation to $185 monthly. The court held that strictly applying the Guidelines would ignore the parties' own agreement to depart from them. A reduction of the magnitude Davis proposed would also disserve their child's best interests.

Nonetheless, the court used the Guidelines as a tool to calculate Davis's child support reduction. The court found it was unable to calculate Davis's actual income, based on the evidence before it. And the court did not impute an income level to Davis. But, the court calculated that had the Guidelines generated the $700 or $1000 support figures, Davis would have had to earn $51,000 or $95,000 annually, assuming Sardoni earned an imputed minimum wage income of $344 weekly or $17,888 annually. If the other-dependent-deduction were then added to the hypothetical calculation, the monthly support obligation would drop to $654 or $942, respectively. This was roughly a six percent reduction. After considering the child's best interests, the court adopted that six percent figure, and reduced Davis's existing $1000 monthly obligation by six percent, and ordered he pay Sardoni $940 monthly. The court did not address the statutory factors, N.J.S.A. 2A:34-23, in determining the award.

A-3902-18T2

II.

We review the trial court's decision to modify child support for an abuse of discretion. J.B. v. W.B., 215 N.J. 305, 325-26 (2013). Also, the trial court's fact-findings are binding "when supported by adequate, substantial, [and] credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

Applying that standard of review, we reject Davis's argument that he did not agree to a $1000 monthly support. The court's finding was supported by sufficient credible evidence in the record. In any event, a trial court previously affirmed that obligation in a 2017 order that Davis did not appeal.

We also reject Davis's argument that the court abused its discretion by eschewing a Guidelines calculation. Rule 5:6A provides that the Guidelines "may be modified or disregarded . . . where good cause is shown," and "the determination of good cause shall be within the sound discretion of the court." The trial court correctly concluded that the parties' own agreement provided good cause for deviating from the Guidelines.

Our courts strive to enforce agreements that resolve matrimonial disputes, applying contract principles tempered by equitable considerations. Holtham v. Lucas, 460 N.J. Super. 308, 319-20 (App. Div. 2019). In modifying parties' consensual arrangements, "care must be taken not to upset the reasonable

6

expectation of the parties." J.B., 215 N.J. at 327. The trial court aptly noted expressions of this instruction in J.B. and Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006). "[N]othing in the law, and no principle of public policy prevents a parent from freely undertaking to support a child beyond the presumptive legal limits of parental responsibility." Id. at 18. "When one or both parents have agreed to undertakings advantageous to a child beyond that minimally required, the public policy favoring stability of arrangements . . . usually counsels against modification." J.B., 215 N.J. at 327 (citing Smith v. Smith, 72 N.J. 350, 360 (1977) and Dolce, 383 N.J. Super. at 20); see also Dolce, 383 N.J. Super. at 20 (stating "courts must 'giv[e] due weight to the strong public policy favoring stability of [consensual] arrangements,'" before modifying a voluntarily assumed obligation to provide more than minimally required support) (quoting Smith, 72 N.J. at 360 (alteration in original)). The child's best interests are the court's guidepost. J.B., 215 N.J. at 327-28; Lepis, 83 N.J. at 157.

In an appropriate exercise of discretion, the trial court applied these principles and found good cause to deviate from the Guidelines. To preserve the parties' agreement and to promote the child's best interests, the court declined to calculate support based on the Guidelines and Davis's alleged income.

7

Notably, had the court done so, it would have derived a significantly reduced support level not because of the changed circumstance, the birth of his new child. Rather, support would have dropped to $185 per month by applying Davis's alleged $21,000 income. But he did not claim his actual income – whatever it was – had significantly changed since the divorce. As the trial court noted, "Because [Davis] had a child does not mean he gets to completely rewrite the agreement."

Nonetheless, we cannot approve the trial court's method for deriving the six percent reduction in Davis's obligation. "If the guidelines are found to be inapplicable in a particular case, the court should consider the factors set forth in N.J.S.A. 2A:34-23 or N.J.S.A. 9:17-53 when establishing the child support award." New Jersey Rules of Court Appendix IX-A, Considerations in the Use of Child Support Guidelines, ¶ 3 (2019), http://njcourts.gov/attorneys/assets/rules/app9a.pdf; see also Fall & Romanowski, Child Support, Protection & Support, Appendix IX-A to R. 5:6A, Considerations in the Use of Child Support Guidelines, ¶ 3 (2019).[3] These statutory factors include:

---

[3] Furthermore, when the court calculates support based on the statutory factors, it must still include a Guidelines calculation, with a statement why the court deviated from it. As Rule 5:6A states:

(1) Needs of the child; (2) Standard of living and economic circumstances of each parent; (3) All sources of income and assets of each parent; (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment; (5) Need and capacity of the child for education, including higher education; (6) Age and health of the child and each parent; (7) Income, assets and earning ability of the child; (8) Responsibility of the parents for the court-ordered support of others; (9) Reasonable debts and liabilities of each child and parent; and (10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23.]

N.J.S.A. 9:17-53 lists substantially the same factors.

Here, the trial court did not consider these factors when it calculated the modification award. It was obliged to do so, along with giving appropriate

A completed child support guidelines worksheet in the form prescribed in Appendix IX of these Rules shall be filed with any order or judgment that includes child support that is submitted for the approval of the court. If a proposed child support award differs from the award calculated under the child support guidelines, the worksheet shall state the reason for the deviation and the amount of the award calculated under the child support guidelines.

See also Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016).

weight to the parties' prior agreement. See N.J.S.A. 2A:34-23(a)(10). We do not disturb the trial court's finding that Davis's income statements were incredible. However, the court was obliged to determine the parties' income, in particular, see N.J.S.A. 2A:34-23(a)(3), and to impute an income if appropriate, see Caplan v. Caplan, 182 N.J. 250, 268 (2005) (stating that "when a parent, without just cause, is voluntarily unemployed or underemployed, income may be imputed to that parent to provide for the child's needs"). If Davis fails to present adequate documentation of his finances, the court may dismiss the application, as he retains the burden to prove he is entitled to a reduced child support obligation. Lepis, 83 N.J. at 159. We therefore remand for reconsideration with these directions.

III.

Finally, Davis contends the trial court erred in failing to permit him to designate the parties' child as a dependent on his income tax statement in alternating years. The trial judge recognized that a court of equity has the power to allocate the right to claim children as dependents to the Internal Revenue Service. Gwodz v. Gwodz, 234 N.J. Super. 56, 60 (App. Div. 1989). However, the judge concluded that "[n]either party has presented the court with any evidence . . . by which it could quantify the impact of the exemption." In view

A-3902-18T2

of the absence of proof, the trial judge did not abuse his discretion in denying Davis's request.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION