**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2794-19

STEPHANIE BAXTER-YOUNG,

    Plaintiff-Appellant,

v.

JAN PARKER and JESSICA
FLORIO,

    Defendants,

and

MICHAEL A. PARKER and
ARDYTH J. PARKER,

    Defendants-Respondents.

_____

Submitted September 27, 2021 – Decided October 7, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2313-16.

Bathgate Wegener & Wolf, PC, attorneys for appellant (Ryan S. Malc, on the brief).

Gruccio, Pepper, DeSanto & Ruth, PA, attorneys for respondents (Joseph E. Ruth, on the brief).

PER CURIAM

Plaintiff Stephanie Baxter-Young appeals from a January 25, 2019 Law Division order granting summary judgment to defendants Michael Parker and Ardyth Parker[1] (collectively defendants) and dismissing the complaint against them with prejudice.[2]  The trial court did not advance any findings of facts or conclusions of law, or any other explanation for its decision.  On appeal, plaintiff argues there are genuine issues of material fact warranting a trial.  We conclude that we are unable to perform our appellate function because the trial court failed to satisfy the requirements of Rule 1:7-4.  We need not—and cannot—determine whether the trial court correctly granted the motion for summary judgment because the court erred by failing to make any findings of fact supporting its determination or otherwise sufficiently explaining its reasoning.  Therefore, we

---

[1]  Since defendants share a last name, we refer to them by their first names for the ease of reference.  By doing so, we intend no disrespect.

[2]  On February 4, 2020, default judgment was entered in favor of plaintiff and against defendants Jan Parker and Jessica Florio, jointly and severally, in the amount of $388,981.92.  Neither submitted any opposition to defendants' motion for summary judgment nor responded to plaintiff's appeal.

vacate the January 25, 2019 order and remand the matter to the trial court for a statement of reasons as required by Rule 1:7-4.

I.

The pertinent facts from the summary judgment record are as follows. In 2012, Jan and his live-in girlfriend of four years, Jessica, moved into 1429 Main Street in Warren Grove. Defendants are Jan's parents and own the subject property but do not reside there. Defendants leased the property to Jan "for no charge except payment of taxes and the agreement to maintain the house," including the utilities, mortgage, and maintenance. No formal contract or written lease was executed between Jan and defendants who stated, "It was just a[] [verbal] agreement until they got on their feet and were able to have their own place." Jessica's three children resided at the property on a full-time basis; Jan's two children only resided there on a part-time basis.

In April 2014, Jessica adopted a dog, Axel, who was approximately two years old, weighed between sixty and ninety pounds, and was presumed to be a mixed breed of terrier and pit bull descent. At that time, plaintiff owned a ninety-five-pound pit bull named Precious, which she had adopted in 2012. Over the next six-month period, plaintiff and Jessica would see each other "at least" once per week. During their encounters, it was a "normal occurrence" for

3

each of them to bring their dogs. Axel and Precious played together and had a good relationship—Axel neither bit nor was aggressive with Precious while playing.

On October 11, 2014, Jessica invited plaintiff to come over to 1429 Main Street. In response, plaintiff "told [Jessica] that [she] would pick up [Precious] and come over." Upon plaintiff's arrival, Axel and Precious greeted each other. Axel ultimately relocated to the computer room where Jessica was seated while Precious remained in the living room. Approximately one half-hour after plaintiff's arrival, Axel "charged" plaintiff and "rammed" into her midsection with his head and knocked her over. At the time, plaintiff had been talking to Jessica in the computer room while standing in the doorway adjacent to the living room.

As a result of the incident, plaintiff sustained serious injuries including a fibula fracture; early reflex sympathetic dystrophy; a right ankle tear of the lateral ligaments; a right ankle contusion, sprain and strain with synovitis and inflammation; a right foot capsular tear in the second and third metatarsophalangeal joints; compression of the digital nerve in her right foot; a right knee medial meniscus tear; and a right hip labral tear. As a result, plaintiff

A-2794-19

required "three surgical procedures, including an operation on her right knee, right ankle[,] and right foot."

On August 25, 2016, plaintiff filed a complaint against defendants alleging they allowed "a dangerous and hazardous condition to exist by failing to take reasonable measures to restrain their violent and dangerous animal" (count one); failed to "supervise and control their dog and to prevent it from doing harm" and were therefore negligent (count two); and allowed "an aggressive animal to be maintained on their property" causing plaintiff , an invited guest, to be "assaulted and injured by the dog" (count three).

At her deposition, plaintiff testified that she witnessed two similar incidents where Axel knocked over a guest at 1429 Main Street. First, in June 2014, plaintiff claimed she witnessed Axel run into Jan's daughter (and defendants' granddaughter) and throw her "up into the air." Second, on an unspecified date, plaintiff testified Axel ran into Jan's niece, which resulted in the niece sustaining a sprained ankle. Plaintiff did not witness this incident, only the injury.

Jessica testified at her deposition that she was "unaware of either of the[] incidents and to the best of [her] knowledge the[] incidents did not occur." Prior to plaintiff's incident, Jessica testified that Axel never bit, attacked, or jumped

on anyone. In a similar fashion, defendants testified they were unaware of either accident involving Axel and that he was a "very loving dog." At his deposition, Michael stated he initially was not "happy [with] the fact that [Axel] was a [p]it [b]ull" but "[Axel] was a very docile dog, and . . . proved me wrong." In a similar fashion, Ardyth testified that she only met Axel a couple of times, but described him as "a very loving dog." "If [you were] sitting on the couch, [Axel would] . . . come up to be petted. That was it."

Following a period of discovery, defendants filed a motion for summary judgment contending there was no genuine issue of material fact that they were involved in plaintiff's incident and breached no duty to plaintiff. The moving defendants also argued there was no evidence Axel had dangerous propensities or that they possessed knowledge of any alleged dangerous propensities. Plaintiff opposed defendants' motion.

On January 25, 2019, the trial court conducted oral argument on defendants' motion for summary judgment and rendered an oral decision on the record immediately thereafter. After reciting the well-settled summary judgment standard under Judson v. People's Bank, 17 N.J. 67 (1954), and Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 529, 533 (1995), the judge merely stated:

In this case I find that it is so one-sided that as a matter of law, the moving party must prevail.

First of all, I will say what do they say, boys will be boys and dogs will be dogs. I've never known a dog that doesn't jump up be it a chihuahua, a bulldog, you name it and the situation here wasn't as if the moving party, the landlords, had care, custody and control of the dog or were there at the time. To the extent the dog may have jumped up on other people in the past I don't think is an indication that it has a dangerous propensity for injuring people. If it had bitten someone in the past, it might have been a different story, but this is common normal conduct for a dog be it a pit bull or a poodle or whatever and I don't think under the circumstances here it gives rise to a liability or a duty under these particular facts for the landlord to have done anything, so motion granted.

A memorializing order was entered. This appeal followed.

## II.

Pursuant to Rule 1:7-4, a trial judge has an obligation to render "an opinion or memorandum decision, either written or oral, [with] find[ings of] fact[] and . . . conclusions of law thereon in all actions tried without a jury . . . ." "The purpose of the rule is to make sure that the court makes its own determination of the matter." In re Tr. Agreement Dec. 20, 1961, by and between Johnson & Hoffman, Lienhard & Perry, 399 N.J. Super. 237, 254 (2006) (citation omitted). "When a trial court issues reasons for its decision, it 'must state clearly [its] factual findings and correlate them with relevant legal

7

conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)).  When that is not done, a reviewing court does not know whether the judge's decision is based on the facts and law or is the product of arbitrary action resting on an impermissible basis.  See Monte, 212 N.J. Super. at 565.

The manner in which a judge complies with Rule 1:7-4 is left to the judge's discretion.  In re Tr. Agreement Dec. 20, 1961, 399 N.J. Super. at 253.  A judge is not required to specify grounds for the granting or denial of a motion and, instead, can rely upon reasons expressed by a party.  Id. at 253-54.  However, the judge must make "such reliance 'explicit,'" Allstate Insurance Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (citation omitted); Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2022), and make "clear the extent of [the judge's] agreement with and reliance on [the] proposed findings of fact and conclusions of law," demonstrating that the judge "carefully considered the evidentiary record and did not abdicate [the judge's] decision-making responsibility."  In re T. Agreement Dec. 20, 1961, 399 N.J. Super. at 254.

A-2794-19

A judge "does not discharge [his or her] function simply by recounting the parties' conflicting assertions and then stating a legal conclusion, or, as here, incorporating by reference one of the parties' arguments." Avelino-Catabran, 445 N.J. Super. at 595. "[A]n articulation of reasons is essential to the fair resolution of a case." O'Brien v. O'Brien, 259 N.J. Super. 402, 407 (App. Div. 1992).

There is nothing in the oral decision or order granting defendants' motion in this matter that confirms the trial court made an independent decision based upon an analysis of the facts and applicable law. "While the failure to provide reasons necessitates a remand, we are left with the option of remanding for a statement of reasons or reversing and remanding for consideration of the motion . . . anew. We determine that the latter course of action is appropriate here." Fisher, 408 N.J. Super. at 303.

The order under review is vacated. The matter is remanded, and the trial court is directed to reconsider defendants' motion and enter a new order within thirty days, together with a written or oral statement of reasons in conformity with Rule 1:7-4. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2794-19