**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0873-24

RAHSAANA BENJAMIN,

     Plaintiff-Respondent,

v.

DENNIS YOUNG,

     Defendant-Appellant.

_____

> Submitted October 21, 2025 – Decided December 16, 2025
>
> Before Judges Gooden Brown and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. SC-000793-24.
>
> Dennis Young, self-represented appellant.
>
> Respondent has not filed a brief.

PER CURIAM

     Defendant, Dennis Young, appeals the October 16, 2024 Special Civil Part judgment entered against him after a bench trial in favor of plaintiff Rahsaana

Benjamin in the amount of $3,000. Plaintiff, a driver for defendant's medical transport company, alleged, when her employment with defendant concluded, defendant improperly retained ownership of a van plaintiff purchased for work use. Because the trial court failed to make adequate findings of fact and conclusions of law to support its determination, we vacate and remand for a new trial in accordance with this decision.

I.

Plaintiff's Small Claims form complaint, filed in September 2024, alleged she "purchased a vehicle to drive [her] routes for work[,] [her] boss, [defendant], registered the vehicle to his business[,] a couple months later his business closed[,] and he didn't return the vehicle." Plaintiff characterized the matter as "Contract" and demanded damages in the amount of "$3,000 plus costs." Defendant denied the allegations, claiming plaintiff agreed to purchase the van with the understanding defendant would own, insure, and register the vehicle and retain ownership whenever plaintiff's employment terminated.

The trial was brief; only plaintiff and defendant testified. Plaintiff explained she "worked for [defendant] for a year and a half," until approximately July 2024, providing "medical transportation" for defendant's company, "TransCare," prior to the parties' dispute. She stated her job entailed driving

medical patients "to and from [their] appointments" using "[defendant's] vehicle." She described encountering "many problems with [her work] vehicle," ranging from cracked windshields to engine failures, and claimed some of defendant's "vehicles [were] held together by [b]ungee cords."

Plaintiff explained she "wanted [her] own vehicle" for safety reasons and, in May 2024, asked defendant "if [she] purchased [her] own [vehicle,] would he insure it and would that be okay? He had to maintain it, but [she] would buy tires for it and . . . brakes." Plaintiff testified defendant agreed, and she bought the van for "$5,800 from a dealership," undisputedly with her own money. She indicated defendant insured the van, and the vehicle's registration and title were in defendant's name. Plaintiff stated, "[a] month later," everyone who worked at defendant's company "got text[] [messages] saying that his business no longer existed" and "[h]e was closing."

The record does not reflect plaintiff presented corresponding text messages, but she testified about a series of significant communications with defendant concerning the van. For example, she testified she texted defendant upon learning he was closing his business, stating, "I'll return your tags, and I'll give you tax and tag money or you could give me $3,000 for this vehicle I just spent $5,800 for." Plaintiff claimed defendant advised her to "hold . . . off on

3

that for a minute," and later advised his company was merging with his wife's company creating "a driving opportunity" for her. Plaintiff testified she notified defendant she "wo[uldn't] be returning" because she had already accepted "another job." According to plaintiff, defendant "took the vehicle . . . [and] never returned" it and "never gave [her] anything for it." She explained she requested $3,000 because she "was trying to be fair because he didn't ask for" the van, and he usually spends far less for transport vans.

Defendant testified, confirming he employed plaintiff as a driver for his non-emergent medical transportation business with a fleet of "about [thirty] vehicles or so." He described their relationship as "very good."

He clarified "all of [the parties'] communications surround[ing] this issue . . . w[ere] done by text message." Although the record suggests defendant referenced and displayed some messages to the court during trial, none were identified, marked, or admitted into evidence.[1]

---

[1] Defendant's appendix contains numerous undated copies of text messages with no indication which messages were presented to the court. Other than the few which were read into the record or vaguely referenced at trial, it is impossible to determine whether the messages in the appendix are accurate or represent the entirety of the parties' communications. We note their content exceeds the few messages referenced in the trial transcript or the court's decision.

Regarding plaintiff's van purchase proposal, defendant claimed "[he] told [plaintiff], [the company] do[esn't] pay $6,000 for vehicles," rather they "typically get [them] around $1,500 to $2,000, and they're work vehicles[,] so people tear them up." He testified he told plaintiff, "[I]f you want a new vehicle then you're going to have to . . . pay the money, [and] it obviously has to come through the business." Defendant confirmed he "paid for taxes, tags, registration, et cetera," after plaintiff paid for the van.

Defendant described the parties' agreement as follows:

> The agreement that we had at that time is that she was scheduled to work until 2026, and she was committed until 2026, and she said at that time she was going to go work at Federal Express or UPS. And I said, okay, so what happens with the van after 2026? She said, well you can keep it, I won't need the van, I'm only using it to drive for you.
>
> At that time I said, okay, what about maintenance, repairs, et cetera?
>
> So we got into a text message conversation, and I have this in black and white, and ultimately she said, I'm not trying to make this a thing, and I quote, just keep the van. This is before we even got the van. So she just wanted to have the van no matter what happened whenever there was a termination or whenever there was a quit she said, just keep the van, no big deal.

A-0873-24

Defendant read a text message from plaintiff which stated, "[He]ar ye, hear ye, upon [plaintiff's] departure from TransCare[,] [defendant] will keep the caravan that [plaintiff] purchased." The court inquired and plaintiff confirmed sending the message, but claimed the excerpt was incomplete and defendant "cut it off because it's two years . . . because [she] told him [she's] only working for two years." Plaintiff further claimed she told defendant "if you fire me or if I leave within those two years[,] I'm taking . . . my s[***] back, I'm taking my van back."

Defendant disputed plaintiff's claimed two-year employment requirement and denied simply retaining the van. He explained, when his company "merge[d] with another," he offered plaintiff a job, and she accepted and underwent the recertification, background check, and drug screening process. He then took the van "to reregister it, retitle it under the [new] company, et cetera . . . . [So,] [t]he van was waiting for her to start working under the new company." He testified plaintiff later notified him she accepted a job elsewhere.

Defendant contended plaintiff agreed without restriction defendant "would keep the van," and the request for $3,000 was "just a number she gave out of the air." Defendant indicated plaintiff sent a text message indicating she

6

A-0873-24

needed $2,200 to remove "a tree in [her] backyard." He argued plaintiff should be required to "just stand by the agreement that [they] made."

After the testimony concluded, the court rendered its oral decision in favor of plaintiff. The trial court found "the parties had a good working relationship," and plaintiff "wanted to upgrade the driving . . . . [and] get a better van." The trial court noted "no dispute she bought the van for [$]5,800, and she used it to drive for him." The trial court further stated,

> [plaintiff] told [defendant], and I'm reading this right here, after two years – [she'll] be driving for [defendant] for two years, [defendant] take[s] care of the registration, [plaintiff] bought the car, [plaintiff will] take care of the tires and . . . the brakes, and [she'll] drive for [defendant]. [She would] provid[e] for [defendant] a better service for [his] customers . . . that's [their] arrangement after two years.[2]
>
> [(Emphasis added).]

The trial court found defendant was "no longer . . . in business" several weeks after the parties' van agreement. Further, the trial court found plaintiff then gave defendant two options: (1) he "c[ould] have the van for [$]3,000, which is a discount," or, alternatively, (2) she would retain "the van and . . . pay

---

[2] The court did not indicate from what text or correspondence it was reading or the extent to which the court's comments contained actual quotes from another source; nor is there a corresponding text message in defendant's appendix.

for the registration." The trial court found defendant's version of the agreement, in which a "reasonable person would make a deal that after two months [she's] going to give [him] a van [worth] $5,800," not "credible," "fair," or "proper." However, the court found plaintiff's "version to be credible" and reiterated that "[a]fter two months [she was] being fair to [defendant]. [He] never wanted to pay $5,800, [she's] not going to charge [him] [the full amount], [and she] want[s] [her] van back." The trial court then ordered defendant "pay [plaintiff] $3,000 within two weeks" at which point, interest would begin to accrue.

On appeal, defendant argues the court's decision derived from "sympath[y]" for plaintiff rather than the record, and the court ignored the testimony and evidence of the agreement between the parties about which there was a "meeting of the minds." He asserts the record showed plaintiff's agreement with defendant provided he would retain ownership of the van upon plaintiff's termination of employment, without any further conditions or minimum time requirement. He asserts, for the first time on appeal, the court further erred as any remedy should have been limited to return of the vehicle.

## II.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div.

2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "[F]indings [of fact] by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)); see also In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021). A trial "'court's interpretation of the law and the legal consequences that flow from established facts,' however, 'are not entitled to any special deference.'" Accounteks.Net, Inc., 475 N.J. Super. at 503 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Critically, this court's ability to resolve an appeal is largely dependent upon the trial court's compliance with its obligation to state its findings of fact and conclusions of law as required by Rule 1:7-4. To comply, the trial court must articulate "factual findings and correlate them" with the principles of law. Curtis v. Finneran, 83 N.J. 563, 570 (1980). Rule 1:7-4(a) requires a court to issue a decision either orally or in writing which "find[s] the facts and state[s]

A-0873-24

its conclusions of law thereon in all actions tried without a jury[.]" Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 304 (App. Div. 2021).

A trial court's legal conclusions are essential "so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016) (alteration in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). Without sufficient findings, a reviewing court does not know whether the judge's decision rests on applicable law or an impermissible basis. See Monte, 212 N.J. Super. at 565. "[A]n articulation of reasons is essential to the fair resolution of a case." O'Brien v. O'Brien, 259 N.J. Super. 402, 407 (App. Div. 1992).

Here, because the court's decision lacked reference to the controlling law or its factual findings as applied to that law, we are unable to fairly review defendant's claims. The parties did not dispute they had an agreement regarding the van—negotiated and memorialized exclusively via electronic text messages. However, the parties presented vastly different representations concerning the terms of that agreement. Although the court indicated it found more reasonable plaintiff's testimony regarding the two-year employment minimum requirement before defendant could retain ownership of the van, it failed to sufficiently

10

identify the facts upon which it relied to determine the precise terms of the agreement or any breach by defendant. Compounding the challenge, because evidence was not identified or marked, we are unable to sufficiently decipher without improper speculation what evidence the court considered or relied upon in making its determination.

Moreover, the court made no statements of law or legal findings regarding the nature and scope of any contract between the parties, the agreement's terms, the enforceability of any or all of those terms, the parties' relative performance of their obligations under the agreement, the nature of any breach, or the appropriate legal remedy. This rendered the court's decision impervious to any fair review. "While the failure to provide reasons necessitates a remand, we are left with the option of remanding for a statement of reasons or reversing and remanding for consideration . . . anew. We determine that the latter course of action is appropriate here." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 303 (App. Div. 2009).

The judgment is vacated. We remand for the court to determine the scope of the agreement and nature of any breach by defendant, with specific reference to the evidence upon which the court relies, the controlling law, and the

appropriate remedy, supported by finding in accordance with <u>Rule</u> 1:7-4.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division