**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4224-19

ARTHUR J. RAPORTE,

     Plaintiff-Appellant,

v.

KAREN SARGENT,

     Defendant-Respondent.

_____

Argued February 14, 2022 – Decided March 8, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0166-02.

Jillian Frost Kalyan argued the cause for appellant (Pellettieri Rabstein & Altman, attorneys; John A. Hartmann, III, of counsel and on the briefs; Jillian Frost Kalyan, on the briefs).

Lauren K. Beaver argued the cause for respondent (Ulrichsen Rosen & Freed LLC, attorneys; Barbara Ulrichsen and Lauren K. Beaver, of counsel and on the brief; Neethi Vasudevan, on the brief).

PER CURIAM

In this post-judgment dissolution matter, plaintiff Arthur J. Raporte appeals from a June 17, 2020 order, denying his motion to terminate alimony and granting his ex-wife, defendant Karen Sargent, a counsel fee award. We affirm.

I.

The parties were married in 1982 and divorced in August 2002. When they divorced, they incorporated the terms of a July 17, 2002 Property Settlement Agreement (PSA) into their final judgment. Article 2.1 of the PSA fixed plaintiff's alimony obligation as follows:

> Husband shall pay to the Wife the sum of Eight Thousand Dollars ($8,000) per month as and for permanent alimony. The parties acknowledge pursuant to Crews v. Crews, 164 N.J. 11 (2000) that this amount will permit Wife to maintain at least the standard of living attained during the marriage. This obligation shall continue until Husband retires. At this time, the parties acknowledge that there is no agreement as to a specific age at which Husband shall retire from full-time employment. Wife reserves the right to contest the reasonableness of Husband's retirement age. The parties agree that, upon his retirement, Husband's obligation shall be modified to Six Thousand Dollars ($6,000) per month. Husband's alimony obligation shall terminate upon the death of either party or remarriage of Wife.
>
> [(Emphasis added).]

In April 2014, plaintiff's counsel notified defendant that plaintiff, at age fifty-nine, was retiring from his position at Lorillard Tobacco, due to health concerns. Although plaintiff had not reached "full retirement age,"[1] defendant opted not to formally challenge plaintiff's retirement decision. Therefore, he commenced making alimony payments at the reduced rate of $6,000 per month, pursuant to the term of the PSA.

After his retirement from Lorillard Tobacco, plaintiff continued to work, managing two urgent care centers on a part-time basis. By March 2020, one of the centers closed and the other was in the process of closing. Plaintiff's attorney notified defendant that plaintiff was "unable to maintain his alimony obligation beyond April 1, 2020" and would be "suspend[ing] his alimony payment effective immediately."

Defendant filed a motion, seeking continuation of alimony at the rate of $6,000 per month, an award of counsel fees and costs, and other relief not

---

[1] "Full retirement age" is defined as "the age at which a person is eligible to receive full retirement for full retirement benefits under section 216 of the federal Social Security Act (42 U.S.C. § 416)." N.J.S.A. 2A:34-23. The record reflects plaintiff reached "full retirement age" in 2020, when he turned sixty-six. See 42 U.S.C. § 416(l)(1)(c). Defendant turned sixty-six in 2019.

relevant to this appeal. Plaintiff filed a cross-motion, asking the court to deny defendant's motion in its entirety and terminate his alimony obligation.

In support of her application, defendant certified she had "minimal assets and income other than the alimony payment[s] from [p]laintiff," and was "unable to work in [her] profession as an architect" after the divorce, because she suffered from medical conditions which "cause[d] severe fatigue and nausea and greatly interfere[d] with [her] day-to-day life." Additionally, defendant certified she owned no real estate, having lost a real estate investment in France during the 2008 recession. Further, she stated her Social Security benefits were just slightly over $1,000 per month, so she was "in desperate need" of plaintiff's alimony payments for "basic necessities."

Plaintiff submitted a Case Information Statement (CIS) with his cross-motion, confirming he ceased working part-time at the end of February 2020. His CIS reflected that as of April 2020, his year-to-date gross income totaled slightly over $9,000, and his unearned income totaled approximately $28,000. The sources of unearned income he listed were a monthly pension and quarterly stock dividends.

Although plaintiff's CIS showed he netted roughly $215,000 in 2019, he submitted no tax returns for that year, nor any preceding years. Similarly,

<span>A-4224-19</span>

although plaintiff noted the parties "did not exchange extensive discovery or [CISs] at the time of [the] divorce," he did not supply Judge Catherine Fitzpatrick with other financial documents to prove what the parties' incomes, assets and liabilities were at the time of the divorce. Instead, he described the assets each party received by way of equitable distribution and claimed defendant "received a significantly disproportionate share of" the parties' assets.

Plaintiff further certified that after the divorce, his expenses increased, but he did not provide specifics. He also stated he remarried, was divorcing a second time, and had a seventeen-year-old daughter from that marriage who would be attending college in the fall. Additionally, he represented that because his monthly expenses for himself and his daughter approached close to $14,000 per month, he could not satisfy his alimony obligation. Finally, plaintiff stated, "I understand that under N.J.S.A. 2A:34-23(j)(3), I may be permitted to terminate my permanent alimony obligation as a result of my retirement even though retirement was not considered grounds for termination of alimony at the time of our agreement," but he further argued defendant "had substantial opportunity and ability to save for retirement."

Less than two weeks after hearing argument on the motions, Judge Fitzpatrick rendered a decision on the record, granting defendant's enforcement

application, continuing plaintiff's alimony obligation at $6,000 per month, and awarding defendant counsel fees and costs in the sum of $7,833. The judge found

> the parties cannot expect a court to present to them a contract better than or different from the agreement they struck between themselves. Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.
>
> This was a [twenty]-year marriage, which incorporated a comprehensive property settlement agreement. And as [defendant's counsel] outlined, . . . there was a provision [about] what . . . the alimony [would] be when the plaintiff retired, and when [it] would . . . terminate − only upon three events, her death, his death, or her remarriage. And based upon the above, the [c]ourt finds that this alimony obligation must continue.

Judge Fitzpatrick also disagreed with the arguments plaintiff advanced under N.J.S.A. 2A:34-23(j)(3), stating

> the parties' property settlement agreement is clear. The court doesn't want to repeat itself, but it is clear and there was clearly a provision made for a step-down once [plaintiff] retired, and he's been paying a reduced rate for six years. [Defendant] evidenced good faith and accepted his position that he retired early and [she] has received $24,000 less [per year] . . . since that time.
>
> . . . .

A-4224-19

> [Defendant] agreed to the reduction in good faith and to avoid litigation, all the while thinking she's going to continue to get $6,000 [in monthly alimony] until she dies, her former husband dies, or in the event of her remarriage.

Regarding defendant's request for counsel fees and costs, the judge concluded defendant's application was made in good faith, defendant had "limited assets," and did "not have an ability to pay her counsel fees in light of her assets." Further, the judge found defendant's attorneys addressed the appropriate factors to warrant a counsel fee award, their hourly rates were reasonable, and plaintiff was able to pay defendant's fees.

## II.

On appeal, plaintiff argues the trial court erred: (1) "as a matter of law when it failed to apply N.J.S.A. 2A:34-23(j) to plaintiff's application to terminate his alimony obligation based on his retirement"; and (2) when "it granted defendant's request for counsel fees based on the denial of plaintiff's application." These arguments are unavailing.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343

(2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, questions of law determined by the trial court require our de novo review. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016); see also Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (stating a statutory interpretation question is a legal issue subject to our plenary review).

Our state "favor[s] the use of consensual agreements to resolve marital controversies." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Thus, a court should not "unnecessarily or lightly disturb[]" a marital agreement, Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman, 158 N.J. at 193-94), and should not "rewrite or revise an agreement when the intent of the parties is clear," id. at 45 (citing J.B., 215 N.J. at 326).

"Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable." Quinn, 225 N.J. at 48 (alterations in original) (quoting Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)). Thus, a court can modify a support agreement where there is a showing of changed circumstances. Id. at 49; see also Lepis v. Lepis, 83 N.J. 139, 146 (1980); N.J.S.A. 2A:34-23(b). When an

obligor seeks a termination of alimony, "the central issue is the supporting spouse's ability to pay." Miller v. Miller, 160 N.J. 408, 420 (1999).

Lepis imposes a fairness dimension to the modification analysis, even when the parties themselves have set the parameters of alimony. 83 N.J. at 148-49; see also Konzelman, 158 N.J. at 194. "In deciding whether to modify an agreement due to changed circumstances, 'the proper criteria are whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change.'" Quinn, 225 N.J. at 49 (quoting Lepis, 83 N.J. at 152).

Regarding plaintiff's first argument, we are mindful that under N.J.S.A. 2A:34-23(j)(3), "[w]hen a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to [September 10, 2014], the obligor's reaching full retirement age . . . shall be deemed a good faith retirement age." Additionally, we acknowledge that typically, "[a]n income reduction resulting from a 'good faith retirement' after age sixty-five is a . . . change of circumstances event, prompting a detailed review of the financial situation facing the parties to evaluate the impact retirement has on a preexisting alimony award." Landers v. Landers, 444 N.J. Super. 315, 320 (App. Div. 2016) (quoting Silvan v. Sylvan, 267 N.J.

Super. 578, 581 (App. Div. 1993)).  But as we have previously noted, N.J.S.A. 2A:34-23(j)(3), "follows the prior principles outlined in Lepis and its progeny, by mandating [a trial court] . . . determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate."  Id. at 324.[2]

By preserving the Lepis standard, the amended statute prevented the evisceration of existing support provisions in marital settlement agreements or consent orders that explicitly contemplated an anticipated event which otherwise might constitute a substantial change in circumstances warranting modification or termination.  In that regard, our Court noted long ago, "[i]f the existing support arrangement has in fact provided for the circumstances alleged as 'changed,' it would not ordinarily be 'equitable and fair,' to grant modification." Lepis, 83 N.J. at 153 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)).

Accordingly, we perceive no basis to disturb Judge Fitzpatrick's enforcement of the PSA, particularly given plaintiff's failure to establish a prima

---

[2]  We note plaintiff's retirement in 2020 did not trigger the rebuttable presumption under N.J.S.A. 2A:34-23(j)(1), which "places the burden on the obligee to demonstrate continuation of the alimony award once an obligor attains full retirement age."  Landers, 444 N.J. Super. at 323.  That is because subsection (j)(1) applies solely to orders and agreements entered after September 10, 2014.  Id.  at 324.

facie case of a substantial change in circumstances beyond his achieving full retirement age. Indeed, as defendant highlights, plaintiff neglected to attach any recent or prior tax returns to his CIS, and the CIS was otherwise incomplete. Further, although plaintiff represented the parties "did not exchange extensive discovery or [CISs] at the time of [the] divorce," he failed to provide Judge Fitzpatrick with "other relevant financial documents . . . in connection with the" very agreement he sought to modify. See R. 5:5-4(a)(5).

Next, to the extent plaintiff contends he "effectively [had] no other option" at the time of the divorce but to agree on a plan for retirement, and he now is being "punishe[d] . . . for his foresight," we disagree. Certainly, as defendant notes, the PSA could have remained silent on what effect, if any, plaintiff's retirement would have on his alimony obligation. Alternatively, the parties simply could have stipulated that any determination on how plaintiff's retirement would affect his alimony obligation would abide the event.

Similarly, plaintiff's argument that the terms of the PSA "are not clear and unambiguous" is unavailing. Indeed, he confirms that in 2002, he "plan[ned] for retirement within the Agreement." Also, we note the final sentence in Article 2.1 of the PSA was explicit in providing for only three bases to terminate plaintiff's alimony obligation: his death; defendant's death; or her remarriage.

11

Moreover, we are satisfied plaintiff not only understood his spousal support obligations under the PSA but relied on the terms of the PSA in 2014 when he stopped working full time and promptly reduced his alimony payments to $6,000 per month.

Lastly, we are satisfied plaintiff's challenge to the counsel fee award lacks merit. R. 2:11-3(e)(1)(E). A trial court's decision to grant or deny attorney's fees in a family action will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Panzer, 141 N.J. 292, 317 (1995)); see also Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021).

Here, plaintiff concedes the judge considered the appropriate factors under Rule 5:3-5(c) and RPC 1.5 when she granted defendant counsel fees and costs in the sum of $7,833. He also admits the judge's award "likely does not rise to the level of an 'abuse of discretion.'" Still, he argues if he prevails on his termination of alimony argument, the fee award also should be reversed.

Because we agree with Judge Fitzpatrick's decision to enforce the PSA, and because the record supports her findings relative to defendant's good faith in filing her motion, the reasonableness of the fees incurred and hourly rates charged by defendant's attorneys, and plaintiff's superior ability to pay

12

defendant's fees, we perceive no reason to second-guess the award of counsel fees and costs to defendant.

To the extent we have not addressed plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION