******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MEGHAN MCCARTAN BUGGELLI
## *v.* ROYCE BUGGELLI
### (AC 46331)

Moll, Westbrook and Pellegrino, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant had previously been dissolved by a judgment rendered by a New Jersey court, appealed from the trial court's denial of her motions seeking reimbursement from the defendant for extracurricular, healthcare and college expenses incurred on behalf of their minor children. The plaintiff claimed, inter alia, that the court improperly denied her motion concerning extracurricular and healthcare expenses because it misinterpreted the parties' settlement agreement, as incorporated into the dissolution judgment and as modified by a postjudgment consent order. *Held*:

The trial court improperly construed the modified settlement agreement in determining that the plaintiff waived her right to seek reimbursement for the claimed extracurricular and healthcare expenses on the ground that she did not provide the defendant with the purported requisite notice, as the consent order, in clear and unambiguous terms, removed the notice requirements of the original settlement agreement with which the plaintiff originally had to comply in order to be entitled to reimbursement from the defendant for extracurricular and healthcare expenses.

The trial court improperly construed the modified settlement agreement to require the plaintiff to submit reimbursement requests for extracurricular and healthcare expenses to the defendant by email, as, pursuant to that agreement, the defendant's obligation to reimburse the plaintiff for extracurricular and healthcare expenses was not dependent on the plaintiff's provision of either notice to the defendant of said expenses or the submission of reimbursement requests for said expenses to him by any particular method of delivery.

The trial court's articulation, issued following the filing of the plaintiff's appeal, did not modify its original decision denying the plaintiff's motion for contribution toward college expenses, as the articulation provided that, pursuant to *Newburgh* v. *Arrigo* (88 N.J. 529), the court had placed great emphasis on its findings demonstrating that the plaintiff had engaged in conduct that was detrimental to the relationship between the defendant and the children, and, insofar as the articulation stated that the defendant should not be obligated to pay any college expenses so long as the plaintiff continued to block any relationship he might have with the children, that statement aligned with this court's interpretation of the original decision to require

consideration of the *Newburgh* factors in determining whether the defendant's obligation to contribute toward college expenses arose.

The trial court improperly relied on the *Newburgh* factors in denying the plaintiff's motion for contribution toward college expenses, as the college expense provisions of the modified settlement agreement were ambiguous as to whether the parties agreed to terms concerning the allocation of their college expense contributions, and the ambiguity created a threshold factual issue that was required to be resolved in an evidentiary hearing before the motion for college expenses could be adjudicated.

Argued June 2—officially released September 9, 2025

*Procedural History*

Motions by the plaintiff seeking, inter alia, reimbursement from the defendant for certain expenses incurred on behalf of the parties' children in connection with a foreign judgment of dissolution, and other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Hon. James G. Kenefick, Jr.*, judge trial referee, denied the plaintiff's motions, and the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Brandon B. Fontaine*, with whom, on the brief, was *Meaghan E. Collins*, for the appellant (plaintiff).

*Dyan M. Kozaczka*, with whom, on the brief, were *Thomas D. Colin* and *Ross M. Kaufman*, for the appellee (defendant).

*Opinion*

MOLL, J. In this postjudgment dissolution matter, the plaintiff, Meghan McCartan Buggelli, appeals from the judgment of the trial court denying her motions seeking from the defendant, Royce Buggelli, (1) reimbursement for extracurricular and healthcare expenses incurred by the plaintiff for the parties' children and (2) contribution toward the children's college expenses. The plaintiff claims that the court improperly denied her motion concerning extracurricular and healthcare expenses

because it misinterpreted the parties' settlement agreement, as incorporated into the dissolution judgment and as modified by a postjudgment consent order.[1] We agree with this claim. The plaintiff further claims that the court improperly (1) modified, by way of an articulation, its original decision denying the motion regarding college expenses and (2) denied the motion regarding college expenses. We conclude that (1) the court's articulation did not modify its original decision denying the motion regarding college expenses, but (2) the parties' modified settlement agreement contains an ambiguity that materially affects the merits of the motion regarding college expenses, such that the court's denial of the motion cannot stand. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts, as found by the trial court or as gleaned from the record, and procedural history are relevant to our resolution of this appeal. The parties were married on October 21, 2000. Four children were born of the marriage: (1) Emma, who was nineteen years old and a freshman at Colgate University at the time of the court's decision; (2) Courtenay and Sydney, who were seventeen years old and seniors in high school at the time of the court's decision; and (3) Juliette, who was twelve years old at the time of the court's decision. On February 16, 2016, the parties were divorced in New Jersey. The dissolution judgment incorporated a settlement agreement executed by the parties that same day (original settlement agreement). The original settlement agreement contains various provisions regarding the children, including terms governing (1) custody and parenting time, (2) extracurricular expenses, (3) healthcare expenses, and (4) college expenses.

---

[1] We address the plaintiff's claims in a different order than they are presented in her principal appellate brief.

Subsequent to the dissolution judgment, issues arose with respect to the defendant's parenting time, whereupon the defendant filed with the Family Part of the Chancery Division of the Superior Court of New Jersey (New Jersey trial court) a motion to reinstate his parenting time, which the New Jersey trial court denied without prejudice on May 12, 2017, pending the completion of reunification therapy.[2] Thereafter, the parties executed a consent order, which the New Jersey trial court entered as a court order on March 16, 2018 (consent order). The prefatory language of the consent order provides, inter alia, that the defendant had "voluntarily determined that he wishes to relinquish legal and residential custody to the plaintiff and forgo all future parenting time . . . ." The consent order further provides, inter alia, that (1) the plaintiff has "sole physical and sole residential custody of the . . . children," (2) the defendant "relinquishes all future parenting time and future communications with the . . . children," and (3) the plaintiff has "sole and exclusive authority to make all decisions concerning the children, without the need to consult with, advise, notify, or obtain the consent of, the defendant."

In August, 2018, unbeknownst to the defendant, the plaintiff moved with the children to Connecticut and, sometime later, successfully changed the children's last names through Probate Court proceedings. Subsequently, the defendant filed with the New Jersey trial court a motion for reunification and visitation. On November 22, 2019, the New Jersey trial court dismissed that motion for lack of subject matter jurisdiction and relinquished exclusive, continuing jurisdiction over any child custody issues in the matter.

---

[2] The New Jersey trial court further determined that the plaintiff failed to comply with a prior order regarding reunification therapy.

In February, 2020, pursuant to General Statutes § 46b-71,[3] the plaintiff registered the New Jersey dissolution judgment in the Superior Court in the judicial district of New Haven. On October 15, 2021, the plaintiff filed a motion seeking reimbursement from the defendant for extracurricular and healthcare expenses that she had incurred for the children (motion for extracurricular and healthcare expenses), to which the defendant filed an objection on November 2, 2021. On January 20, 2022, the plaintiff filed a motion seeking contribution from the defendant toward the children's college expenses (motion for college expenses). On October 20, 2022, the trial court, *Hon. James G. Kenefick, Jr.*, judge trial referee, held an evidentiary hearing on those two motions.[4] Both parties testified at the hearing and, prior to the hearing, submitted financial affidavits. Following the hearing, both parties filed posthearing briefs.

On February 24, 2023, the court issued a memorandum of decision denying the motion for extracurricular

---

[3] General Statutes § 46b-71 provides: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment and the name and address of the court in the foreign state which rendered such judgment.

"(b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

[4] The court considered other motions during the evidentiary hearing, which motions are not germane to this appeal.

and healthcare expenses and the motion for college expenses. On March 16, 2023, the plaintiff filed this appeal. On April 19, 2024, in response to an order issued by this court on March 27, 2024, the trial court issued an articulation of its decision.[5] Additional facts and procedural history will be set forth as necessary.

Before turning to the plaintiff's claims, we note that the original settlement agreement contains a choice of law provision, which was unaffected by the consent order and which states in relevant part: "The place or places of execution of [the original settlement] [a]greement shall have no bearing on the law governing its interpretation, because it is understood and agreed by both parties that the [original settlement] [a]greement shall be construed and governed in accordance with the laws of the [s]tate of New Jersey, exclusive of conflicts of law principles. . . ." Thus, insofar as we must interpret the original settlement agreement, or the original settlement agreement as modified by the consent order (modified settlement agreement), New Jersey contract law governs.

Pursuant to New Jersey contract law, "we apply basic contract principles because [a]n agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute. . . . According to those principles, we must discern and implement the common intention of the parties. . . . Therefore, our role when interpreting marital settlement agreements is to consider what is written in the context of the circumstances at the time of drafting

---

[5] On December 14, 2023, pursuant to Practice Book § 66-5, the plaintiff filed a motion for articulation, to which the defendant filed an opposition on December 22, 2023. On January 2, 2024, the trial court denied the motion for articulation. On January 22, 2024, pursuant to Practice Book § 66-7, the plaintiff filed a motion for review. On March 27, 2024, this court granted the plaintiff's motion for review and granted, in part, the relief requested, ordering the trial court to articulate certain aspects of its decision.

and to apply a rational meaning in keeping with the expressed general purpose. . . . In doing so, the words of an agreement are given their ordinary meaning. . . . Therefore, where the parties' intent is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." (Citations omitted; internal quotation marks omitted.) *Woytas* v. *Greenwood Tree Experts, Inc.*, 237 N.J. 501, 511–12, 206 A.3d 386 (2019). "A contract is ambiguous if its terms are susceptible to at least two reasonable alternative interpretations. . . . When a contract is ambiguous in a material respect, the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence. . . . While extrinsic evidence should never be permitted to modify or curtail the terms of an agreement, a court may consider all of the relevant evidence that will assist in determining the intent and meaning of the contract in attempting to resolve ambiguities in the document." (Citations omitted; internal quotation marks omitted.) *Capparelli* v. *Lopatin*, 459 N.J. Super. 584, 604, 212 A.3d 979 (App. Div. 2019).

Although we apply New Jersey contract law in interpreting the original settlement agreement and the modified settlement agreement, "procedural issues such as the standard of review are governed by Connecticut law." *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447, 165 A.3d 1137 (2017). "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption

in favor of the correctness of its action. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Footnote omitted; internal quotation marks omitted.) *K. D.* v. *D. D.*, 214 Conn. App. 821, 825–26, 282 A.3d 528 (2022).

I

We first address the plaintiff's claim that the trial court improperly denied the motion for extracurricular and healthcare expenses. For the reasons that follow, we agree with the plaintiff.

The following additional facts and procedural history are relevant to our resolution of this claim. Paragraph 3.3 of the original settlement agreement sets forth terms regarding the children's extracurricular activities. Paragraph 3.3 provides in relevant part: "The parties agree that the [plaintiff] and/or [the defendant] may enroll the children in extracurricular activities . . . . The parties agree that they shall pay a maximum of $100 per month per child jointly for said expense without the necessity of consultation and/or agreement with the other party and deemed [preauthorized]. . . . [The defendant's] maximum cost per child per month is $45 . . . . Provided that the [defendant's] prorated monthly share of the activity does not exceed $45, [the plaintiff] may sign up the child for that activity without the need to obtain [the defendant's] consent, however [the plaintiff] shall notify [the defendant] of her intent to sign up the child or children for such an activity, within a reasonable time frame prior (under the [circumstances]), or waives reimbursement. Any expense above $100 per month per child, must be decided jointly by [the defendant] and [the plaintiff] and consented thereto. Extracurricular activities . . . shall be paid for 55% by [the plaintiff] and 45% [by the defendant] in

accordance with the [c]hild [s]upport [g]uidelines if the parties so agree. In addition, although an activity might be considered '[preauthorized]' by this paragraph, [the plaintiff] must notify [the defendant] a reasonable time period prior to enrolling the child although [the defendant] understands that consent is not necessary. Any reimbursements due to [the plaintiff] shall occur on a monthly basis . . . ."

Paragraphs 4.2 and 4.3 of the original settlement agreement contain terms concerning the children's healthcare expenses. Paragraph 4.2 provides in relevant part: "[T]he [plaintiff] shall pay the first $250 per year per child towards unreimbursed medical expenses incurred on behalf of the minor children. Thereafter, the payment of the non-reimbursable medical, dental, and prescription drug expenses incurred on behalf of the unemancipated children shall be allocated between the parties with 45% to the [defendant] and 55% to the [plaintiff]. The [plaintiff] shall give the [defendant] thirty days prior written notice before incurring any bill in excess of [$200] per treatment, except in an emergency, or $250 for series of treatment, except in an emergency. . . ."

Paragraph 4.3 of the original settlement agreement provides in relevant part: "The [defendant] shall provide the [plaintiff] with reimbursement and/or payment of his share of any unreimbursed medical expenses incurred on behalf of the children within fourteen (14) days of the date the [plaintiff] submits the bills to him by personal delivery, email or regular mail. . . . The obligation of the [defendant] shall include [various enumerated healthcare] expenses, provided the notice of the provisions of this paragraph have been complied with, as well as the requirements set forth in paragraph 4.2. . . ."

The consent order contains the following relevant provisions. Paragraph 1 provides: "Paragraph 1.1 of . . .

the [original settlement agreement] . . . is hereby modified such that, effective with the entry of [the] [c]onsent [o]rder, the plaintiff shall have sole physical and sole residential custody of the . . . children . . . ."[6]

Paragraph 2 of the consent order provides: "The defendant hereby relinquishes all future parenting time and future communications with the . . . children. Accordingly, [p]aragraphs 1.1 through 1.21 . . . of the [original settlement agreement], providing for the defendant's parenting time are hereby modified such that the defendant shall not have any future parenting time or communication with the children. However, nothing in [the consent] [o]rder is meant to prohibit the [c]hildren, in the event they wish and when of sufficient age, to contact the [d]efendant."

Paragraph 3 of the consent order provides: "As a result of having sole legal and residential custody of the children, the plaintiff shall have the sole and exclusive authority to make all decisions concerning the children, without the need to consult with, advise, notify, or obtain the consent of, the defendant. It is the specific intention and agreement of the parties that the plaintiff shall have the unilateral authority to make all decisions, of every nature, regarding the children, including, without limitation, decisions relating to the children's medical treatment, schooling, place of residence within or outside of New Jersey, choices of activities and vacations. [The] [c]onsent [o]rder eliminates the rights and obligations to notify, advise or consult with the defendant, or to obtain his consent and [p]aragraphs 1.2,

_____

[6] Paragraph 1.1 of the original settlement agreement provides in relevant part: "It is hereby agreed that it is in the best interest of the minor children that the parties will share joint legal custody with [the plaintiff] being the [p]arent of [p]rimary [r]esidence and the [defendant] being the [p]arent of [a]lternate [r]esidence. . . ."

through 1.21 . . . of the [original settlement agreement] are hereby modified to comport with this agreement that [the] plaintiff shall be able to make all decisions affecting the children unilaterally."

Paragraph 5 of the consent order provides: "[The] [d]efendant's requirement pursuant to . . . article XIV of the [original settlement agreement is] hereby modified in that [the] [d]efendant shall not be required to carry any life insurance for the benefit of the minor children and may cancel same and remove the children as beneficiaries."[7]

Paragraph 6 of the consent order provides: "[Paragraph 37.1 of the original settlement agreement] is hereby declared null and void in that neither party shall have to disclose to the other party their home address.[8] In addition, neither party shall be required to inform the other party of their place of business, or its address. As a result, both parties agree that email shall be an acceptable means of service of process of any judicial documents. Each party shall provide the other with a designated email address to be used for service of process or other judicial document." (Footnote added.)

---

[7] Paragraph 14.1 of the original settlement agreement, contained within article XIV, provides: "The [defendant] shall name the [c]hildren as irrevocable beneficiaries of term life insurance in the minimum amount of $250,000 for each child for a total of $1,000,000 until each child is emancipated, designating the [plaintiff] as the [t]rustee of the proceeds of each individual $250,000 policy. The [plaintiff] shall name the [c]hildren the irrevocable beneficiaries of term life insurance in the minimum amount of $250,000 for each child for a total of $1,000,000 until each child is emancipated, designating the [defendant] as the [t]rustee of the proceeds of each individual $250,000 policy. Either party may reduce the coverage by $250,000 when each child is emancipated."

[8] Paragraph 37.1 of the original settlement agreement provides: "For so long as any provision of [the original settlement] [a]greement remains executory, each party shall, at all times, keep the other informed of his or her place of residence, and shall promptly notify the other of any change, giving the address of the new place of residence."

Paragraph 9 of the consent order provides: "All provisions of the [original settlement agreement], and the provisions of all [o]rders entered since the [j]udgment of [d]ivorce, that are not contrary to the provisions of [the] [c]onsent [o]rder, shall remain in full force and effect."

In his posthearing brief, the defendant argued that the plaintiff had waived her right to reimbursement for extracurricular and healthcare expenses because she had failed to abide by the applicable notice requirements set forth in the original settlement agreement, which requirements, the defendant maintained, were not modified by the consent order. In her posthearing brief, the plaintiff argued that the consent order altered the original settlement agreement by eliminating all notice requirements, such that, pursuant to the modified settlement agreement, she was not obligated to provide him with notice before seeking reimbursement for the claimed extracurricular and healthcare expenses.[9]

In addressing the motion for extracurricular and healthcare expenses, the court summarized the issue as "whether the plaintiff is required to give the defendant proper and timely notice of expenses incurred where she is seeking reimbursement of medical and extracurricular expenses . . . ." Ostensibly agreeing with the defendant's argument regarding the scope of the consent order, the court observed that the consent order "only refers to article I [containing paragraphs 1.1 through 1.21 of the original settlement agreement] . . . article XIV . . . and article XXXVII [containing] [p]aragraph 37.1 . . . . There is no reference to article III

---

[9] As relief, the plaintiff requested (1) $15,940 in extracurricular expenses and (2) approximately $6073 in healthcare expenses. Additionally, the plaintiff requested that the court conduct another evidentiary hearing to receive evidence regarding (1) communications between the parties concerning the children's college education and (2) the defendant's receipt of bills from the plaintiff.

[containing paragraph 3.3] . . . [or] article IV [containing paragraphs 4.2 and 4.3] . . . .'' The court further referenced the requirement set forth in paragraph 6 of the consent order that the parties provide one another with a ''designated email address to be used for service of process or other judicial document,'' as they had ''agree[d] that email shall be an acceptable means of service of process of any judicial documents.''

The court proceeded to determine that the plaintiff ''has not given the [defendant] proper notice of [the claimed extracurricular and healthcare] expenses and has waived reimbursement. [The plaintiff] clearly had the right to incur the expense[s] without [the defendant's] consent but should have sent him a copy of the bills by email requesting reimbursement. [The plaintiff's] claim that a judge in New Jersey suggested they use a common [application] called SupportPay is not credible.[10] There is no evidence in the record of proceedings in New Jersey to support that claim. [The plaintiff] failed to use email as a means of providing that information to [the defendant].'' (Footnote added.) The court denied the motion for extracurricular and healthcare expenses and ordered that, ''[g]oing forward, the plaintiff needs to follow the existing orders regarding reimbursement for healthcare and extracurricular expenses . . . .''

In its ensuing articulation, the court stated that it had ''note[d] [in its decision] that the plaintiff was using a[n] [application] called SupportPay to send invoices and bills to the defendant, which he never received as he was not signed up with [SupportPay]. The plaintiff testified that a [New Jersey judge] told [the parties] to

---

[10] During the evidentiary hearing, the plaintiff testified that (1) beginning in 2017, upon the recommendation of a New Jersey judge, she began uploading receipts for the children's extracurricular and healthcare expenses into the software application SupportPay and (2) both parties had access to SupportPay.

use [SupportPay] back in 2017. The defendant disagrees and there is no evidence of such an order. As the defendant was not signed up with [SupportPay], he never received any bills or invoices [that the plaintiff had] sent through [SupportPay]. Finally, the plaintiff never filed a separate motion to open the hearing for additional testimony, which would have been a waste of time as [the plaintiff] was using . . . SupportPay to send [the defendant] bills and invoices. [The plaintiff] should have been using [the defendant's] email address rather than SupportPay."

The plaintiff contends that (1) the consent order modified the original settlement agreement so as to eliminate all notice requirements, and, therefore, the court incorrectly interpreted the modified settlement agreement to require her to provide notice to the defendant vis-à-vis extracurricular and healthcare expenses in order to trigger the defendant's obligation to reimburse her for such expenses, and (2) the court misconstrued the modified settlement agreement to require her to submit reimbursement requests for extracurricular and healthcare expenses to the defendant by email. We consider these contentions in turn.

A

The plaintiff asserts that the consent order modified the original settlement agreement by removing all notice requirements, such that the court misinterpreted the modified settlement agreement to contain notice requirements attendant to extracurricular and healthcare expenses. In response, the defendant argues that the court's analysis was correct because the consent order modified only those provisions of the original settlement agreement that the consent order expressly identified—paragraphs 1.1 through 1.21, article XIV, and paragraph 37.1—such that the notice requirements applicable to extracurricular and healthcare expenses

set forth in paragraphs 3.3, 4.2, and 4.3 remain unaltered. We conclude that the court improperly construed the modified settlement agreement to maintain the notice requirements vis-à-vis extracurricular and healthcare expenses initially imposed in the original settlement agreement.

We construe the consent order, in clear and unambiguous terms, as having removed the notice requirements of the original settlement agreement with which the plaintiff originally had to comply in order to be entitled to reimbursement from the defendant for extracurricular and healthcare expenses. The first sentence of paragraph 3 of the consent order provides that the plaintiff is authorized "to make all decisions concerning the children, without the need to . . . notify . . . the defendant," and the third sentence provides, unequivocally and without qualification, that the consent order "eliminates the rights and obligations to notify . . . the defendant . . . ."[11] Taken together, these terms function to eliminate the language of (1) paragraph 3.3 of the original settlement agreement providing that the plaintiff "shall notify" the defendant of her intent to enroll any child in an extracurricular activity with an associated cost not exceeding the defendant's prorated monthly share of $45, with such notice to be provided within "a reasonable time frame" or "a reasonable time period" prior to enrollment, and with the plaintiff "waiv-[ing] reimbursement" if she failed to comply,[12] (2) paragraph 4.2 of the original settlement agreement providing

---

[11] The third sentence of paragraph 3 of the consent order provides: "[The] [c]onsent [o]rder eliminates the rights and obligations to notify, advise or consult with the defendant, or to obtain his consent and [p]aragraphs 1.2, through 1.21 . . . of the [original settlement agreement] are hereby modified to comport with this agreement that [the] plaintiff shall be able to make all decisions affecting the children unilaterally." We do not construe the portion of this sentence regarding the modification of paragraphs 1.2 through 1.21 of the original settlement agreement as limiting the scope of the language eliminating the plaintiff's rights and obligations regarding, inter alia, notice.

[12] Paragraph 3.3 of the original settlement agreement also provides that "[a]ny expense above $100 per month per child, must be decided jointly by

that "[t]he [plaintiff] shall give the [defendant] thirty days prior written notice before incurring any bill in excess of [$200] per treatment, except in an emergency, or $250 for series of treatment, except in an emergency," and (3) paragraph 4.3 of the original settlement agreement providing that the defendant's obligation to reimburse the plaintiff for healthcare expenses was conditioned on the plaintiff's compliance with "the notice of the provisions of [paragraph 4.3]," which required the plaintiff to submit the relevant bills to the defendant "by personal delivery, email or regular mail."

We are not persuaded by the defendant's argument that the consent order modified only those provisions of the original settlement agreement expressly identified in the consent order. Paragraph 9 of the consent order provides that "[a]ll provisions of the [original settlement agreement], and the provisions of all [o]rders entered since the [j]udgment of [d]ivorce, *that are not contrary to the provisions of* [*the*] [*c*]*onsent* [*o*]*rder*, shall remain in full force and effect." (Emphasis added.) We construe this language, stated conversely, to provide that *all provisions* of the original settlement agreement that *are contrary* to the terms of the consent order, regardless of their location within the original settlement agreement, are superseded.

Indeed, applying the defendant's reasoning leads to unworkable results. By way of example, paragraph 6.4 of the original settlement agreement provides: "[The plaintiff] represents that she wants her children to attend the best school possible irrespective of financial cost(s) and to consider the wishes of the child, while [the defendant] represents that he believes the cost of

_____

[the defendant] and [the plaintiff] and consented thereto." In her principal appellate brief, the plaintiff states that the foregoing language "is not relevant to this appeal, because [she] has never claimed money owed subject to this language, even though she has incurred those expenses." Thus, we need not discuss the effect of the consent order on this language.

said school and the parties' finances at that time should dictate where each child attends school. The parties are unable to settle their dispute at this time and agree that the choice of school shall abide the event. Notwithstanding, *the parties agree that any school choice shall be based on consultation and agreement, and that neither party has a sole and exclusive right to decide which school each child will attend.*" (Emphasis added.) The consent order, in clear and unambiguous terms, vests the plaintiff with "the sole and exclusive authority to make all decisions concerning the children, without the need to consult with, advise, notify, or obtain the consent of, the defendant," and reflects "the specific intention and agreement of the parties that the plaintiff shall have the unilateral authority to make all decisions, of every nature, regarding the children, including, without limitation, decisions relating to the children's . . . schooling," thereby superseding the consultation and agreement requirement of paragraph 6.4 of the original settlement agreement. Pursuant to the defendant's rationale, because paragraph 6.4 of the original settlement agreement is not referenced in the consent order, the terms of paragraph 6.4 remain operational notwithstanding the irreconcilable language in the consent order.[13] Simply put, the defendant's interpretation of the consent order is untenable.

Pursuant to our construction of the modified settlement agreement, the plaintiff has no responsibility to send any notice to the defendant in order for his obligations to reimburse her for extracurricular and healthcare expenses to arise. Accordingly, we conclude that the court improperly construed the modified settlement agreement in determining that the plaintiff waived her

---

[13] In a footnote in his appellate brief, the defendant argues that "paragraph 6.4 of the [original] settlement agreement was never modified by the . . . consent order."

right to seek reimbursement for the claimed extracurricular and healthcare expenses on the ground that she did not provide the defendant with the purported requisite notice.

B

The plaintiff also contends that the court misconstrued the modified settlement agreement to require her to submit reimbursement requests for extracurricular and healthcare expenses to the defendant by email. In response, the defendant argues that the court properly concluded that the plaintiff was not entitled to reimbursement for extracurricular and healthcare expenses in light of her failure to comply with the terms of the modified settlement agreement. We agree with the plaintiff.

Initially, we observe that, with respect to extracurricular expenses, the original settlement agreement is silent as to whether the plaintiff must use a particular delivery method to submit a reimbursement request to the defendant, and the consent order does not address that subject.[14] Paragraph 3.3 of the original settlement agreement merely states that any extracurricular expense reimbursements owed by the defendant to the plaintiff

---

[14] We note that paragraph 3.3 of the original settlement agreement provides in relevant part: "The parties agree that the [plaintiff] and/or [the defendant] may enroll the children in extracurricular activities . . . regardless of whether any of the events or activities associated with such programs are scheduled to occur on the other's parenting time. This provision is to be cross-referenced with the terms of [paragraph] 1.1 (b). . . ." Paragraph 1.1 (b), in turn, sets forth terms concerning the defendant's parenting time and details the parties' responsibilities when the children's extracurricular activities are scheduled during the defendant's parenting time. Paragraph 1.1 (b) further provides: "All emails between the parties will pertain strictly to issues regarding the [parties'] children, including issues regarding child support/reimbursement, and issues regarding [certain] litigation . . . ." We do not discern anything in this language to reflect that the plaintiff must submit reimbursement requests for extracurricular expenses to the defendant by email.

"shall occur on a monthly basis . . . ." With respect to healthcare expenses, by comparison, paragraph 4.3 of the original settlement agreement requires the plaintiff to send bills, for the purpose of reimbursement, to the defendant "by personal delivery, email or regular mail." By its very terms, however, paragraph 4.3 of the original settlement agreement incorporated a notice requirement. Paragraph 4.3 provides in relevant part that "[t]he obligation of the [defendant] shall include [various enumerated healthcare] expenses, *provided the notice of the provisions of this paragraph have been complied with*, as well as the requirements set forth in paragraph 4.2. . . ." (Emphasis added.) As we conclude in part I A of this opinion, the consent order eliminated the notice requirements of paragraphs 3.3, 4.2, and 4.3 of the original settlement agreement. In other words, the modified settlement agreement does not tether the defendant's obligation to reimburse the plaintiff for healthcare expenses to the plaintiff's submission of reimbursement requests to the defendant "by personal delivery, *email* or regular mail." (Emphasis added.)

Insofar as the court's decision reflects that it interpreted paragraph 6 of the consent order to compel the plaintiff to email extracurricular and healthcare expense reimbursement requests to the defendant, that interpretation is incorrect. In clear and unambiguous terms, paragraph 6 of the consent order required, inter alia, the parties to provide each other with "a designated email address to be used for *service of process or other judicial document*." (Emphasis added.) The use of email contemplated in paragraph 6 applies to service of process or other judicial documents only and has no bearing on the delivery of reimbursement requests for extracurricular or healthcare expenses, which cannot

rationally be characterized as "process" or "judicial document[s]."[15]

In sum, pursuant to the modified settlement agreement, the defendant's obligation to reimburse the plaintiff for extracurricular and healthcare expenses is not dependent on the plaintiff either (1) providing notice of said expenses to him or (2) submitting reimbursement requests for said expenses to him by any particular method of delivery.[16] Accordingly, we conclude that the court improperly construed the modified settlement agreement in denying the motion for extracurricular and healthcare expenses.[17] Because the court did not make factual determinations as to the sums, if any, of the claimed extracurricular and healthcare expenses to

---

[15] The plaintiff also asserts that she provided the defendant with information concerning her claimed extracurricular and healthcare expenses (1) through the Support Pay application and (2) by email in October, 2021, in connection with the motion for extracurricular and healthcare expenses, such that she sufficiently complied with any applicable requirements regarding notice and delivery of reimbursement requests. In light of our conclusion that the modified settlement agreement did not impose any notice or delivery requirements on the plaintiff with respect to her claimed extracurricular and healthcare expenses, we need not discuss these assertions further.

[16] In her principal appellate brief, the plaintiff acknowledges that, in order to receive reimbursement from the defendant for extracurricular and healthcare expenses, she necessarily must provide information regarding her claimed expenses. As the plaintiff represents, "[n]aturally, if [she] would like contribution or reimbursement, she has a 'burden of proof' and would need to provide some information. [She] is not disputing that reality. Rather, [her] point is that the court orders do not require any notice and advisement, and therefore there is not any specific timing or method of delivery for the information. Likewise, there is no waiver or other penalty if the information is not provided a certain way. [She] could provide it to the defendant to resolve it or, in theory, it might be obtained through a court proceeding."

[17] The plaintiff additionally claims that, even if the court correctly construed the modified settlement agreement, the court improperly determined that she had waived her right to the claimed extracurricular and healthcare expenses, thereby precluding her from again seeking reimbursement for those expenses after correcting the defects identified by the court. In light of our conclusion that the court misinterpreted the modified settlement agreement, thereby necessitating reversal of the court's judgment, we need not resolve this claim.

which the plaintiff is entitled, and as "[t]his court cannot find facts in the first instance"; *Casablanca* v. *Casablanca*, 190 Conn. App. 606, 622, 212 A.3d 1278, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019); we deem the proper remedy to be to reverse the denial of the motion for extracurricular and healthcare expenses and to remand the case for a new evidentiary hearing on the motion.

## II

We next address the plaintiff's claims relating to the court's denial of the motion for college expenses. The plaintiff asserts that the court improperly (1) modified, by way of its articulation, its original decision denying the motion for college expenses, and (2) denied the motion for college expenses. For the reasons that follow, we conclude that (1) the court's articulation did not constitute an improper modification of its original decision denying the motion for college expenses, but (2) there is an ambiguity in the modified settlement agreement that is germane to the merits of the motion for college expenses, and, therefore, the court improperly denied the motion.

The following additional facts and procedural history are relevant to our resolution of these claims. Paragraph 6.1 of the modified settlement agreement[18] provides: "In addition to all other payments required to be made by the parties hereunder, the parties agree to contribute to the college costs for the four (4) children in proportion to their respective incomes, including income from assets at the time, and New Jersey case law at that time. Nothing in . . . [a]rticle [VI] shall prevent the parties from agreeing otherwise."

[18] We do not construe the consent order to have modified the terms of paragraphs 6.1, 6.2, or 6.3 of the original settlement agreement, such that these provisions are identical in the original settlement agreement and in the modified settlement agreement. For ease of reference, we refer to the modified settlement agreement in discussing these provisions.

Paragraph 6.2 of the modified settlement agreement provides in relevant part: "Both parties recognize that under current New Jersey law they are both responsible for providing a college or other [postsecondary] education for [the] children pursuant to factors listed in [*Newburgh* v. *Arrigo*, 88 N.J. 529, 443 A.2d 1031 (1982) (*Newburgh* factors)].[19] The parties agree that the allocation of same shall abide the event based on the parties' proportionate share of income at that time and as further modified in this agreement. . . . Prior to either party having an obligation to contribute to such expenses, and as a prerequisite to triggering either party's responsibility to contribute to said cost, the children shall first have the obligation to apply for reasonable federal student loans, scholarships, grants and, further, to utilize any funds accumulated by them personally and in the [prejudgment] children's [accounts established pursuant to 26 U.S.C. § 529 (§ 529 accounts)] already established . . . ." (Footnote added.)

Paragraph 6.3 of the modified settlement agreement provides in relevant part: "Since the parties are unable

[19] See *Newburgh* v. *Arrigo*, supra, 88 N.J. 545 ("[i]n evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child").

to agree at this juncture as to the responsibilities for the educational expenses of [the] children post [high school], the [parties] agree to confirm and attempt to reach a determination with regard to their mutual obligation at the time a child commences post [high school] education. In the eventuality that the parties cannot resolve those issues, the issues will be [brought] first to mediation . . . and then to a court of competent jurisdiction. The law at the time of the application shall control the parties' obligation to pay for the educational cost of [the] children. . . .''

In his posthearing brief, the defendant argued that, under New Jersey law, and, in particular, the *Newburgh* factors, he was relieved of any obligation pursuant to the modified settlement agreement to contribute to the children's college expenses. In her posthearing brief, the plaintiff argued that the *Newburgh* factors were inapplicable because the modified settlement agreement set forth the terms governing the parties' obligations regarding the children's college expenses.[20]

In addressing the motion for college expenses, the court summarized the issue to be "whether [the plaintiff] and the children need to follow the [*Newburgh*] factors . . . [as] referenced in article VI [containing paragraphs 6.1, 6.2, and 6.3] . . . of [the modified settlement agreement].'' The court stated that, "[a]lthough the parties attempted mediation pursuant to [the modified settlement agreement], it broke down. One could argue that the [plaintiff] can then make all the decisions regarding college without input from the [defendant] . . . . However, th[e] court finds that the [plaintiff] and . . . Emma had an obligation to give [the defendant] access to the school for information regarding the

---

[20] As relief, the plaintiff requested (1) approximately $13,329 in college expenses for Emma's freshman year at Colgate University and (2) "orders regarding the payment of future college expenses.''

finances, student aid, and academics. [The defendant] also had a right to know what other funds were available that could be applied to the cost of [Emma's] education. None of this was provided to the [defendant]." The court continued: "[I]t would appear that the [plaintiff] and . . . Emma want the [defendant] out of their li[ves] totally except for his financial help. The [plaintiff] was not cooperating with the reunification therapy in New Jersey. [The plaintiff] moves to Connecticut without telling [the defendant], she goes to Probate Court in Connecticut to change the minor children's [last] name[s], she does not give him proper notice for reimbursement of the expenses for medical and extracurricular expenses, she does not provide him with the financial information necessary to determine the net cost at Colgate [University], and Emma will not authorize his access to her account at Colgate [University] or respond to his email asking what she was studying.[21] . . . The court has carefully considered the specific facts of this case and the [*Newburgh*] factors . . . and finds that the [plaintiff] is not entitled to reimbursement for . . . the costs incurred at Colgate University for Emma's freshman year." (Footnote added.) The court then denied the motion for college expenses and ordered that, "[g]oing forward, the plaintiff needs to follow the existing orders regarding reimbursement . . . for the cost of college. The children also need to allow the [defendant] access to their financial and academic records at whatever college they attend."

In its ensuing articulation, with respect to its reliance on *Newburgh*, the court stated it had "considered all of the [*Newburgh*] factors . . . but gave more weight to the eleventh factor regarding 'the child's relationship

___

[21] During the evidentiary hearing, the defendant testified that (1) he emailed Emma asking about her studies, which email she ignored, and (2) Emma declined to sign a release for him to access her financial information at Colgate University.

to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance.' . . . It is clear from [the] court's factual findings in its [decision] that the [plaintiff] wanted no contact for herself or [the] children with the [defendant]. When [the defendant] attempted reunification with the children in New Jersey, the [New Jersey trial] court found the [plaintiff] in violation of the [defendant's] rights because of her failure to comply with reunification therapy pursuant to a prior court order. [The plaintiff] then moves to Connecticut without notice to the [defendant] and goes to Probate Court to have the last name[s] of the children changed. The [plaintiff] has blocked any relationship [the defendant] might have with the children and until that changes, he should not be obligated to share in the cost of college." (Citation omitted.)

The plaintiff claims that (1) the court's articulation improperly functioned to modify its original decision denying the motion for college expenses and (2) the court improperly denied the motion for college expenses because, inter alia, it incorrectly determined that the *Newburgh* factors were applicable. We conclude that (1) the court's articulation did not constitute an improper modification of its original decision denying the motion for college expenses, but (2) the court improperly denied the motion for college expenses on the basis of its application of the *Newburgh* factors because the modified settlement agreement contains an ambiguity, the resolution of which affects the question of whether the *Newburgh* factors apply in this case.[22]

---

[22] The plaintiff further claims that (1) if the *Newburgh* factors are applicable, then the court's analysis of the *Newburgh* factors was flawed, (2) the court misinterpreted the modified settlement agreement to require that the children's school records be shared with the defendant, and (3) the court failed to enter an order regarding the parties' obligations for future college expenses. In light of our conclusion that an ambiguity in the modified settlement agreement requires reversal of the court's judgment, we need not resolve these additional claims.

A

We first consider the plaintiff's contention that the court's articulation constitutes an improper modification of its original decision denying the motion for college expenses. The plaintiff maintains that (1) the original decision required her to comply with the "existing orders" concerning college expenses, in addition to requiring the children to permit the defendant to access their school records, in order to receive contribution from the defendant for college expenses in the future, whereas (2) the court's articulation created a "much higher standard" by relieving the defendant of any future obligation to contribute toward the children's college expenses until the plaintiff had ceased "block[ing] any relationship he might have with the children . . . ." We disagree.

"As a general rule, [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary [if] the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Sabrina C.* v. *Fortin*, 176 Conn. App. 730, 750, 170 A.3d 100 (2017). "It is well settled that [a]n articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision. . . . Insofar as we must construe the . . . judgment and the court's [articulation], our review is plenary." (Citation omitted; internal quotation marks omitted.) *C. D.* v. *C. D.*, 218 Conn. App. 818, 828, 293 A.3d 86 (2023). "[J]udgments are to be construed in the same fashion as other written

instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . [W]e are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 138, 300 A.3d 1233, cert. denied, 348 Conn. 928, 304 A.3d 860 (2023).

We conclude that the court's articulation did not fashion a new requirement to be satisfied in order to trigger the defendant's obligation to contribute toward the children's future college expenses. In the original decision, the court framed the issue before it vis-à-vis the motion for college expenses to be whether the plaintiff and the children "need to follow the [*Newburgh*] factors," as referenced in the modified settlement agreement. The court proceeded to make findings regarding the defendant's postdissolution attempts at reunification with the children, as well as actions taken by the plaintiff and Emma that, as the court found, illustrated that they "want[ed] the [defendant] out of their li[ves] totally except for his financial help." Then, expressly stating that it had considered the *Newburgh* factors, the court determined that the plaintiff was not entitled to contribution from the defendant for the costs incurred for Emma's freshman year at college, whereupon the court (1) denied the motion for college expenses and (2) ordered that "[g]oing forward, the plaintiff needs to follow the existing orders regarding reimbursement . . . for the cost of college [and] [t]he children also need to allow the [defendant] access to their financial and academic records at whatever college they attend."

We do not agree with the plaintiff's proposition that, in order for the defendant to be liable to contribute

to future college expenses, the original decision *only* required (1) the plaintiff "to follow the existing orders regarding reimbursement for . . . the cost of college" and (2) the children to provide the defendant with access to their school records. Read in its entirety, we construe the original decision as reflecting a determination by the court that the *Newburgh* factors must be considered when deciding whether the defendant is obligated to contribute toward college expenses. In other words, we interpret the original decision to provide that the plaintiff, when seeking contribution from the defendant for college expenses in the future, must establish that (1) there has been compliance with existing orders regarding college expenses, (2) the defendant has been granted access by the children to their school records, *and* (3) when applied, the *Newburgh* factors justify an order mandating that the defendant contribute to the college expenses.

In light of our construction of the original decision, we reject the plaintiff's claim that the articulation modified the original decision. In its articulation, the court (1) explained that, although it had considered all of the *Newburgh* factors in the original decision, it had given "more weight" to the eleventh factor focusing on the relationship between the paying parent and the child, (2) recited findings that it had made in the original decision reflecting "that the [plaintiff] wanted no contact for herself or [the] children with the defendant," and (3) stated that the plaintiff "has blocked any relationship [the defendant] might have with the children and until that changes, he should not be obligated to share in the cost of college." We discern no conflict between the original decision and the articulation. Clarifying the court's reasoning in the original decision, the articulation provided that, pursuant to *Newburgh*, the court had placed great emphasis on its findings demonstrating that the plaintiff had engaged in conduct that

was detrimental to the relationship between the defendant and the children. Insofar as the articulation stated that the defendant should not be obligated to pay any college expenses so long as the plaintiff continued to "[block] any relationship he might have with the children," that statement aligns with our interpretation of the original decision to require consideration of the *Newburgh* factors in determining whether the defendant's obligation to contribute toward college expenses arises. Stated another way, the court's articulation provides that, pursuant to *Newburgh*, the defendant will have no obligation to contribute toward the children's college expenses as long as the plaintiff's conduct "block[ing] any relationship he might have with the children" persists.

In sum, we conclude that the articulation did not modify the original decision. Accordingly, the plaintiff's contention fails.

B

The plaintiff next asserts that the court improperly denied the motion for college expenses because it incorrectly determined that the *Newburgh* factors were applicable. The plaintiff maintains that the modified settlement agreement is clear and unambiguous in requiring the parties to pay for college expenses in proportion to their respective incomes, such that the court should have enforced the terms of the modified settlement agreement rather than engaging in an analysis of the *Newburgh* factors. In response, the defendant argues that the modified settlement agreement mandates that the court apply the *Newburgh* factors in determining the parties' obligations to pay for college expenses. We conclude that the modified settlement agreement is ambiguous as to whether the parties agreed to terms

concerning the allocation of their college expense contributions. In light of this ambiguity, we further conclude that the court improperly relied on the *Newburgh* factors to deny the motion for college expenses.[23]

The following legal principles are relevant to our analysis. "The [New Jersey] [l]egislature and [New Jersey] courts have long recognized a child's need for higher education and that this need is a proper consideration in determining a parent's child support obligation. . . . [*Newburgh*] set[s] forth a non-exhaustive list of twelve factors a court should consider in evaluating a claim for contribution toward the cost of higher education. . . . Six years [after *Newburgh* was decided], the [l]egislature essentially approved those criteria when amending the support statute, N.J. [Stat. Ann. §] 2A:34-23 (a).[24] . . . Thus, a trial court should balance the

[23] We note that the court did not determine expressly that the modified settlement agreement was clear and unambiguous in requiring the application of the *Newburgh* factors in relation to the motion for college expenses; however, the court (1) noted that the modified settlement agreement referred to the *Newburgh* factors, (2) stated that one of the issues before it was whether the plaintiff and the children needed to follow the *Newburgh* factors, and (3) applied the *Newburgh* factors. Accordingly, we conclude that the court necessarily determined that the modified settlement agreement, in clear and unambiguous terms, required it to apply the *Newburgh* factors in adjudicating the motion for college expenses.

[24] Section 2A:34-23 (a) of the New Jersey Statutes Annotated provides in relevant part: "In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:

"(1) Needs of the child;

"(2) Standard of living and economic circumstances of each parent;

"(3) All sources of income and assets of each parent;

"(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

"(5) Need and capacity of the child for education, including higher education;

"(6) Age and health of the child and each parent;

statutory criteria of N.J. [Stat. Ann. §] 2A:34-23 (a) and the *Newburgh* factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." (Citations omitted; footnote added; internal quotation marks omitted.) *Gac* v. *Gac*, 186 N.J. 535, 542–43, 897 A.2d 1018 (2006). "[W]here [however] parties to a divorce have reached an agreement regarding children attending college and how those college expenses should be divided, and no showing has been made that the agreement should be vacated or modified, the [trial court] need not apply all twelve factors pertinent to college expenses as identified in [*Newburgh*]. Rather, the court should enforce the agreement as written.[25]" (Footnote in original.) *Avelino-Catabran* v. *Catabran*, 445 N.J. Super. 574, 591, 139 A.3d 1202 (App. Div. 2016).

In light of these legal precepts, the question before us is whether the modified settlement agreement reflects an agreement by the parties regarding the division of their college expense obligations. On the basis of paragraphs 6.1, 6.2, and 6.3 of the modified settlement agreement (college expense provisions), we conclude that the modified settlement agreement is ambiguous in this regard. Paragraph 6.1 reasonably can be read as

"(7) Income, assets and earning ability of the child;

"(8) Responsibility of the parents for the court-ordered support of others;

"(9) Reasonable debts and liabilities of each child and parent; and

"(10) Any other factors the court may deem relevant. . . ."

We note that N.J. Stat. Ann. § 2A:34-23 was amended effective January 8, 2024; see 2023 N.J. Laws, c. 238, § 6; however, said amendment has no bearing on this appeal. Accordingly, we refer to the current revision of N.J. Stat. Ann. § 2A:34-23.

[25] "In the absence of an agreement by the parties regarding the specific division of college costs, courts should balance the factors set forth in *Newburgh* and the statutory criteria of N.J. [Stat. Ann. §] 2A:34-23 (a), along with any other factors the court deems relevant to a fair allocation of expenses." *Avelino-Catabran* v. *Catabran*, 445 N.J. Super. 574, 591 n.8, 139 A.3d 1202 (App. Div. 2016).

providing that the parties' incomes *and* the *Newburgh* factors,[26] as implicated by the phrase "New Jersey case law," must be considered in determining the allocation of the parties' college expense obligations. Paragraph 6.2, in contrast, states that "[t]he parties agree that the allocation of [their college expense obligations] shall abide the event based on the parties' proportionate share of income at that time and as further modified in this agreement," which reasonably can be interpreted to mean that the parties' incomes, alone, govern the issue.[27] Paragraph 6.3, then, provides that "the parties are unable to agree at this juncture as to the responsibilities for the educational expenses of [the] children post [high school]" and that, should they require judicial intervention to resolve a dispute in this respect, "[t]he law at the time of the application shall control the parties' obligation to pay for the educational cost of [the] children," which reasonably can be construed as stating that (1) the parties had not reached an agreement as to the division of their college expense obligations at the time of the original settlement agreement and (2) New Jersey law, including the *Newburgh* factors, shall govern that determination if the parties cannot resolve the issue without judicial intervention. It is reasonable to construe the college expense provisions to hinge the parties' college expense obligations on either (1) their incomes alone, or (2) New Jersey law, including the *Newburgh* factors, which encompass an examination of the parties' finances. In light of the competing, reasonable constructions of the college expense provisions, it necessarily follows that they are ambiguous.

---

[26] We note that the *Newburgh* factors contemplate an analysis of the parents' finances. See *Newburgh* v. *Arrigo*, supra, 88 N.J. 545 (listing fourth *Newburgh* factor as "the ability of the parent to pay [the] cost [of higher education]" and sixth *Newburgh* factor as "the financial resources of both parents").

[27] The meaning of the phrase "as further modified by this agreement" in paragraph 6.2 of the modified settlement agreement is unclear.

Having concluded that the college expense provisions are ambiguous, we further conclude that the court improperly relied on the *Newburgh* factors to deny the motion for college expenses. The aforementioned ambiguity creates a threshold factual issue to be resolved before the motion for college expenses may be adjudicated. If the intent of the parties was to allocate their college expense obligations solely on the basis of their incomes, then the correct course would be for the court to enforce the modified settlement agreement as written without resorting to the *Newburgh* factors, provided "no showing has been made that the agreement should be vacated or modified";[28] *Avelino-Catabran* v. *Catabran*, supra, 445 N.J. Super. 591; however, if the parties did not intend for their incomes, alone, to determine their college expense obligations, then the court "should balance the factors set forth in *Newburgh* and the statutory criteria of N.J. [Stat. Ann. §] 2A:34-23 (a), along with any other factors the court deems relevant to a fair allocation of expenses." Id., 591 n.8; see also *Gac* v. *Gac*, supra, 186 N.J. 543. Under these circumstances, we deem the proper remedy to be to reverse the denial of the motion for college expenses and to remand the case for a new evidentiary hearing to resolve the ambiguity in the college expense provisions.[29] See *Capparelli* v. *Lopatin*, supra, 459 N.J. Super. 604 ("[w]hen a contract is ambiguous in a material respect,

---

[28] Nothing in the record indicates that either party has sought to vacate or to modify the college expense provisions.

[29] If, on remand, the court determines that the parties did not intend to predicate their college expense obligations solely on their incomes, then the parties should be afforded an opportunity to present evidence to guide the court's analysis of the relevant factors under New Jersey law, including the *Newburgh* factors. We leave it to the discretion of the court on remand to determine whether to hold separate evidentiary hearings addressing (1) the ambiguity of the college expense provisions, (2) the relevant factors pursuant to New Jersey law, if necessary, and (3) the motion for extracurricular and healthcare expenses; see part I of this opinion; or to address these issues in a single proceeding.

the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence").

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.